Mel REID, Plaintiff,

v.

Edward BARRETT, Allan Gewirtz, Anthony Morelli, Gail Nelson, John O'Neill, Benjamin Rosenberg, Margaret Rucker, Kathleen Stockel, John Engel, Manalapan-Englishtown Regional Board of Education, Defendants.

Civ. A. No. 77–247.

United States District Court,
D. New Jersey.

March 30, 1979.

Chamlin, Schottland, Rosen, Cavanagh & Kelley, P.A. by Michael D. Schottland, West Long Branch, N.J., for plaintiff.

Dawes, Gross & Youssouf by Joseph D. Youssouf, Freehold, N.J., for defendants.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This matter is before the Court on cross-motions for summary judgment. At all times relevant to this action plaintiff, a tenured teacher employed by defendant Manalapan-Englishtown Regional Board of Education, (the Board), was President of the Manalapan-Englishtown Education Association, (the Union), the collective bargaining agent for teachers working for the Board. Other defendants include the individual Board members and Edward Barrett, the Superintendent of Manalapan-Englishtown schools. Alleging a denial of his civil rights, plaintiff invokes 42 U.S.C. § 1983. All damage claims and other aspects of this matter have been adjusted, and the only issue that remains for consideration is plaintiff's demand for injunctive relief.

In its present posture, this case revolves around a letter dated November 19, 1976, written on Union stationery by plaintiff in his capacity as President. The missive is addressed to the parents or guardians of Manalapan-Englishtown students, and laments the reduction by the Board of time available for parent-teacher conferences.

The Union resolved to circulate the letter in a way which, to plaintiff's knowledge, it had not previously employed to disseminate its materials. Union members were to give copies of the letter to their pupils with instructions to bring the message to their parents or guardians. The Union did not consult the Administration prior to the attempt at distribution; Barrett learned of the plan in a more roundabout fashion. Just before the letters were to be given to the students, a teacher in one of the district schools showed a copy to her principal; the principal called the Assistant Superintendent, who in turn alerted Barrett.

The Superintendent immediately ordered that the letters not be sent home with the

children,[1] but despite this command, a significant number of copies were distributed and made their way into district homes.

Barrett's actions precipitated a barrage of letters, dated November 22, 1976, from plaintiff to Union members and to the Superintendent. Subsequently the Board filed formal tenure charges against plaintiff, allegedly in retaliation for his exercise of First Amendment rights. These charges have since been dismissed with prejudice prior to a hearing on the merits. The Second Count of the complaint, which relates solely to those tenure charges, is therefore moot and must be dismissed. Since the letters dated November 22, 1976 are only relevant to the Second Count, it is unnecessary to decide whether those documents are protected by the First Amendment.

The particular labor dispute in which the letters played a part was the subject of an unfair labor practices suit brought by the Union against the Board. The New Jersey Public Employment Relations Commission has ruled in the Board's favor with respect to the events concerning prohibition of distribution of the November 19 letter.

▮▮▮ Plaintiff requests this Court to order defendants, at their expense, to distribute a copy of the November 19 letter, with an explanation, to all parents and guardians of Manalapan-Englishtown students. Although the parties come dangerously close to seeking an advisory opinion, see *United Public Workers v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947), I believe this matter is sufficiently concrete so as to satisfy the "case or controversy" requirement of Article III, section 2 of the Constitution. In addition, the case has not been entirely mooted, since there is a strong possibility of recurrence of the same conflict in a similar context. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 125,

94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). This leads me to an analysis of the merits of plaintiff's claim.

▮▮▮ In order to prevail under 42 U.S.C. § 1983, plaintiff must establish that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Board is a "person" subject to suit, *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 701, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), as are its individual members, *Burt v. Board of Trustees of Edgefield County School Dist.,* 521 F.2d 1201, 1205 (4th Cir. 1975) and the Superintendent, *Akron Board of Education v. State Board of Education of Ohio,* 490 F.2d 1285, 1291 (6th Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). All defendants acting in their official capacities were acting under color of state law, see N.J.S.A. 18A:10–1 *et seq.;* 18A:12–1 *et seq.;* 18A:17–20. The question which remains is whether the Superintendent's actions in prohibiting distribution of the letter violated plaintiff's First Amendment right of freedom of expression. Even conceding that the November 19 letter concerned an issue of public interest, I hold that Barrett could validly proscribe its dissemination to parents through the pupils.

Let me first make clear that this is not a case of invasion of academic freedom, (see, for example, *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957)), and plaintiff's attempt to pose the issue in those terms obscures the reality of the situation. The letter was addressed to parents and guardians, not to students. Plaintiff was not interested in whether the pupils even read the message; the targets of his words were the adult voting members of the community. The Union sought to

---

1. There is some dispute over the applicability of two Board policy statements to Barrett's actions. Those resolutions generally require prior approval by the Superintendent for distribution of certain materials through the pupils. There was also an unwritten policy of the Board to the same effect. I do not find it

necessary to determine either the applicability or the constitutionality of those policy statements. Barrett had inherent authority, under his general supervisory power, to take the action which forms the basis of this suit. N.J.S.A. 18A:17–20; N.J.Admin.Code 6:3–1.12.

use the students as couriers for its views, not to express those views to the pupils themselves. For the same reason, an argument that rests upon the premise that there has been a violation of the students' rights to receive a protected communication, *see Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756–57, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), is simply irrelevant.

Plaintiff's suggestion that the Court view the instant restriction as a prior restraint on speech bearing a presumption of unconstitutionality, and sustainable only if essential to a vital governmental interest, e. g., *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (per curiam); *Alderman v. Philadelphia Housing Authority,* 496 F.2d 164, 168 (3d Cir.), *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974), fails to take into account the burden which initially rests on plaintiff.

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. (citations omitted).

*Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). Before defendants can be required to demonstrate how their actions or policies serve a compelling state interest, plaintiff must prove that there has been a constitutionally cognizable abridgement of his right of free speech. *Connecticut State Federation of Teachers v. Board of Education Members,* 538 F.2d 471, 479 (2d Cir. 1976) [hereinafter *CSF*]. A qualitative evaluation of the right asserted reveals that Barrett did not actionably infringe on plaintiff's freedom of expression.

Teachers retain a First Amendment right to comment on matters of public interest in connection with the operation of the public schools in which they work.

*Pickering v. Board of Education of Twp. High School Dist. 205, Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). A natural corollary to one's right to freedom of expression is the right to take reasonable and necessary steps to convey one's ideas or comments. *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938). When exercised on campus, however, the scope of protection to be afforded communicative interests must be ascertained in light of the special characteristics of the school environment, *Healy v. James,* 408 U.S. 169, 180, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

The fact that the message was not directed to the students weakens the right asserted here. Plaintiff actually desired free, efficient transport of thousands of letters; he was unconcerned with the impact of the message on its initial recipients, the pupils. Additional factors which dilute the strength of plaintiff's interest are the non-public nature of the communication facility, *see Roseman v. Indiana University of Pennsylvania, at Indiana,* 520 F.2d 1364, 1368 (3d Cir. 1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 329 (1976), and the availability of alternative means of distribution, *CSF,* 538 F.2d at 480–81.

First Amendment guarantees, however fundamental, are not absolute: One may not freely express oneself whenever, however, and wherever one pleases. *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). It would be ludicrous to contend that these primary school students comprise a kind of public postal service, freely accessible to any and all persons who desire to communicate with the children's parents or guardians, and beyond the control of the Superintendent. Yet that is what plaintiff in essence asserts by insisting that the pupils should be available to do the Union's bidding, free of all interference by the Administration. I cannot conceive of an ordinary citizen with a grievance against the Board attempting a

scheme similar to that for which plaintiff claims constitutional protection here. The circumstance of relative ease of access to the students does not in any way enhance the validity of plaintiff's theory, since a teacher's First Amendment rights rise no higher than those held by the citizenry at large, *see Abood v. Detroit Board of Education,* 431 U.S. 209, 231–32, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). As the Superintendent had no constitutional obligation to let any organization use the pupils to carry messages home, and use of the students for that purpose may be denied altogether, his order barring distribution in the instant case does not work a constitutional deprivation. *CSF,* 538 F.2d at 481.

■ The existence of reasonable alternative means of communication further eviscerates plaintiff's theory, *e. g., Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 93, 97 S.Ct. 1614, 50 L.Ed.2d 155 (1977); *Pell v. Procunier,* 417 U.S. 817, 823–24, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). It is not clear what method the Union used to distribute its material prior to this unprecedented attempt. Of the course, the United States Postal Service was a possibility; the letters would likely qualify as third class mail, 39 U.S.C.A. § 4451(c), and the nonprofit nature of the Union (see Reid deposition at 11) may have allowed it to take advantage of the most favorable bulk rates, 39 U.S.C.A. § 4452. Publication of the letter in a newspaper of general circulation in the district may have been cheaper than mailing, and probably could have achieved the desired effect. Even house-to-house distribution by Union members was a possibility. In sum, the existence of such options renders the denial of the use of the students so inconsequential that it cannot be considered a violation of plaintiff's First Amendment rights. *CSF,* 538 F.2d at 481. Defendants' motion for summary judgment is granted and the complaint is dismissed. No costs.