AMERICAN FUTURE SYSTEMS, INC.,
et al., Plaintiffs,

v.

The PENNSYLVANIA STATE UNIVER-
SITY et al., Defendants.

Civ. No. 81–0171.

United States District Court,
M. D. Pennsylvania.

April 1, 1981.

As Amended June 19, 1981.

Henry T. Reath, George E. Pierce, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Delbert J. McQuaide, R. Mark Faulkner, McQuaide, Blasko, Schwartz, Fleming & Faulkner, State College, Pa., for defendants.

## OPINION

MUIR, District Judge.

The Plaintiffs filed this action alleging violations of their constitutional rights and of rights granted by Pennsylvania law. Jurisdiction is alleged to arise under 28 U.S.C. §§ 1331 and 1343 and the doctrine of pendent jurisdiction. Contemporaneously with the filing of the complaint the Plaintiffs filed a motion for a preliminary injunction. A brief in support of the motion was filed on February 13, 1981 and an opposing brief was filed on February 27, 1981. The Plaintiffs have chosen not to file a reply brief. For the following reasons, the motion for a preliminary injunction will be denied.

This case is the second chapter in the controversy between American Future Systems, Inc. (AFS) and the Pennsylvania State University regarding the latter's policies relating to commercial activities in its dormitories. The first chapter resulted in a judgment in favor of Penn State upholding its regulations against an attack that they violated American Future Systems's First Amendment rights. *American Future Systems, Inc. v. The Pennsylvania State University*, 464 F.Supp. 1252 (M.D.Pa.1979), aff'd, 618 F.2d 252 (3d Cir. 1980) (*American Future Systems I*). The facts insofar as they are relevant to the Court's determination of the Plaintiffs' motion for a preliminary injunction are those taken from the Plaintiffs' complaint and the attachments to the complaint.

AFS is a corporation engaged in the business of retail sales of table china, tableware, crystal, and cookware through demonstrations of its merchandise at colleges throughout the United States. AFS seeks by this action to be permitted to present sales demonstrations at the invitation of individual students in the common areas and dormitory rooms within the residence halls of Penn State, to disseminate commercial information to groups of students through sales demonstrations at the invitation of individual host students in their

individual dormitory rooms and to consummate sales to individual students in the student hosts' rooms in residence halls at Penn State. Plaintiffs Wingert and Brubaker, Penn State students who reside in residence halls, seek relief permitting them to invite AFS to common areas and their individual dormitory rooms in residence halls, to conduct sales demonstrations to groups of invited students in their rooms and in common areas of residence halls and to invite AFS to their dormitory rooms for purposes of consummating sales of goods to other students following the demonstrations. Plaintiffs Del Valle, Varsics, Habacher and Spiller, students at Penn State who do not reside in residence halls, seek an order permitting them to attend and participate in AFS group presentations in common areas and dormitory rooms and to consummate sales from AFS in those rooms.

The policy of Penn State during the time that *American Future Systems I* was litigated and now is that AFS may conduct group demonstrations in specified common areas of each residence hall and that following those demonstrations a student may invite an AFS representative to the student's room to purchase AFS goods. AFS is also free to solicit invitations to individual student's rooms at the group demonstrations or by telephone or mail. What Penn State does not permit are group demonstrations in an individual dormitory room or sales in dormitory rooms to a purchaser other than the occupant of the room. Also prohibited are group solicitations of sales or the consummation of commercial transactions in the common areas of the residence halls.

It is the Plaintiffs' position that under the ruling of the Court of Appeals in *American Future Systems I* they are entitled to the relief sought in the complaint. This is not the appropriate occasion for the Court finally to determine if the Plaintiffs are correct. At this juncture, it is only necessary for the Court to determine whether Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction granting the relief sought in the complaint.

▮ The standards for a preliminary injunction that maintains the status quo are set forth in *The Continental Group, Inc. v. Amoco Chemical Corporation*, 614 F.2d 351, 356–7 (3d Cir. 1980), as follows:

> To support a preliminary injunction, the moving party must demonstrate that irreparable injury will occur if relief is not granted to maintain the status quo until a final adjudication on the merits can be made and that there is a reasonable probability of eventual success on the merits. In addition, the court must weigh the possibility of harm to the nonmoving party as well as to any other interested persons and, when relevant, harm to the public.

In this case, the Plaintiffs do not seek to maintain the status quo but request preliminary relief that alters the status quo to permit them to sell merchandise in a manner currently prohibited by Penn State regulations. In a situation in which a litigant seeks a preliminary injunction that alters the status quo pending final judgment "the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). The Plaintiffs in this case, therefore, must convince the Court that the equities weigh decidedly in their favor. *Schlesinger v. Carlson*, 489 F.Supp. 612, 619 (M.D.Pa.1980).

The Plaintiffs in this action may conveniently be divided into three groups based on their statuses and the relief they seek. As a consequence, the Court will address the elements separately for each group.

▮ AFS's contention that it has shown a high probability of success on the merits rests on its conclusion that the decision of the Court of Appeals in *American Future Systems I* granted it certain rights that Penn State has abridged. This contention is without merit. The decision by the Court of Appeals upheld as constitutional Penn State's regulations that prohibit group demonstrations in a student's dormitory room, commercial solicitations at group demonstrations, and sales to a student at a location in a dormitory other than the student's own room. Based on that decision, the

Court concludes that AFS has practically no chance of succeeding on the merits in its contention that it must be permitted to conduct group sales demonstrations in student's rooms and be permitted to consummate sales in a student's room to someone other than that student.

The decision in *American Future Systems I* specifically upheld Penn State's regulations to the extent that they rested on a distinction between commercial speech and other types of speech. For this reason, the Court concludes that AFS has failed to show a probability of success on the merits with respect to its contention that the entire presentation as evidenced by the cue cards that are attached to the complaint as part of Exhibit E must be permitted at the group demonstration. Cards 24 through 31 relate to the guarantee and payment plans offered to the students. It appears to the Court that it is likely that those materials constitute solicitation of sales at a group demonstration, conduct that Penn State may constitutionally prohibit. The same conclusion applies to cards 52 through 65 as well as those portions of cards 66 and 67 that involve distribution of contracts to the group.

■ There is, however, a more fundamental reason why AFS is unlikely to succeed on the merits of this litigation. The doctrine of res judicata provides that a party that has suffered an adverse judgment may not in subsequent litigation against the same party seek to relitigate any issue that was or could have been determined in the first action. *See Montana v. United States*, 440 U.S. 147 at 153–54, 99 S.Ct. 970 at 973–74, 59 L.Ed.2d 210 (1979); *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 266 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). In order for res judicata to apply there must be an identity of parties, the existence of a final judgment on the merits by a court of competent jurisdiction, and the second action must concern the same subject matter or cause of action as the prior suit. *Sworob v. Harris*, 451 F.Supp. 96, 99–100 (E.D.Pa.), *aff'd*, 578 F.2d 1376 (3d Cir. 1978) (Mem.). There can be no

dispute that the first two requirements are present in this case. As to the third requirement, the second action may be said to involve the same cause of action if liability is sought to be imposed on a different theory but based on the same "liability creating conduct" of the defendant which gave rise to the first action. *Coggins v. Carpenter*, 468 F.Supp. 270, 280 (E.D.Pa.1979).

Based on the allegations of the complaint and the exhibits attached thereto it appears to the Court that AFS is complaining about the same conduct of which it complained in *American Future Systems I*, namely, Penn State's regulations limiting access by AFS to the university's dormitories. It also appears that AFS had in that action opportunity to present to this Court and to the Court of Appeals any claim it might have had as to the precise contours of the permissible scope of group demonstrations as well as any other matters relating to any other constitutional rights that may have been affected by Penn State's policies. At this juncture AFS has not demonstrated a probability of success on the merits of its litigation because its claims are likely to be foreclosed by the doctrine of res judicata on account of the outcome of *American Future Systems I*."

■ Plaintiffs Brubaker and Wingert are students who reside in Penn State residence halls and who wish to act as hosts to group demonstrations and to conduct sales in their dormitory rooms. According to the attachments to the complaint, both of these plaintiffs were advised by letter that common areas in the dormitories could be used to demonstrate AFS products and that sales could be consummated in a student's room only to that student.

These Plaintiffs are unlikely to prevail on their argument that Penn State's regulations unconstitutionally restrict their First Amendment right of commercial speech. Although they are not bound by a doctrine of res judicata by *American Future Systems I*, that decision constitutes binding legal precedent on this Court insofar as the legal issues involved are concerned. To the extent Wingert and Brubaker base their First Amendment claims on the right to

conduct the same types of demonstrations and sales that AFS seeks to conduct, they stand in no different position than AFS itself did in *American Future Systems I.* As a consequence of that decision, the Court concludes that the Plaintiffs have failed to demonstrate a probability of success on the merits of that aspect of their commercial speech claims.

Brubaker and Wingert also assert that Penn State's regulations unconstitutionally inhibit their rights to associate under the First Amendment. As set forth in the complaint, however, these associational rights are indistinguishable from the rights sought with respect to making group demonstrations and sales in their dormitory rooms. Indeed, the primary purpose of the demonstrations is to encourage the attendees at the shows to purchase merchandise. *See American Future Systems v. Pennsylvania State University*, 464 F.Supp. at 1258 (Finding of Fact # 58). Moreover, the Court fails to see how the restrictions imposed on the Plaintiffs infringe in any material way on the right to associate. As indicated above, these Plaintiffs may engage in sales demonstrations in common areas and may consummate sales in the rooms of people purchasing the products. Of course, the Plaintiffs are free to conduct more extensive commercial activities at locations other than dormitory halls of Penn State. Given the close nexus between associational freedom and freedom of speech, *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958), the Court thinks it unlikely that Plaintiffs will prevail in an argument that their associational rights under the First Amendment are broader than their rights of speech under that amendment.

Plaintiffs Brubaker and Wingert also claim that Penn State's regulations impermissibly infringe on their constitutional right of privacy which they claim requires that they be permitted to conduct the commercial activity they desire in their dormitory rooms. The Court finds that the Plaintiffs have failed to show a sufficiently high probability of success on this issue to justify the preliminary injunction they seek. The Supreme Court has recognized two kinds of

privacy that are constitutionally protected. The first protects the individual from the disclosure of certain matters. The second protects the individual from unwarranted governmental intrusion when the individual seeks to make certain personal decisions. *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977). The only conceivable privacy interest involved in this case is the latter. That interest, however, has been restricted to so-called fundamental matters "relating to marriage, procreation, contraception, family relationships, child rearing and education." *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). The Supreme Court has held that commercial speech and by implication the ability to engage in commercial transactions based on that speech is entitled to less protection than other First Amendment rights. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). In light of this, it is unlikely that the Plaintiffs will prevail in an argument resting on a right to privacy.

The complaint also alleges that Penn State's policy is enforced in an arbitrary and capricious manner. The complaint does not, however, set forth any facts that support those allegations. The materials attached to the complaint evidence reasonable activity by university officials. In this circuit, civil rights complaints must set forth facts with specificity. *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976). The complaint fails to do so. The Court concludes that the Plaintiffs at this point in the litigation have failed to demonstrate a probability of success on the merits on their claim of arbitrary and capricious conduct by Penn State officials because as matters now stand the count alleging arbitrary and capricious conduct is subject to dismissal for failure to state a claim upon which relief may be granted.

Brubaker and Wingert also contend that Penn State's policies abridged their rights under the Pennsylvania Landlord and Tenant Act of 1951, as amended, 68 P.S. § 250.554. Assuming that that act is appli-

cable to residents of a Penn State dormitory, Plaintiffs have not demonstrated that they are likely to prevail on that claim. The Landlord and Tenant Act prohibits any provision in a lease that limits a tenant's right to have social guests in his premises or to purchase goods from a source of the tenant's choosing. Nothing in the complaint indicates that Penn State prohibits either Plaintiff from inviting an AFS representative to his room to make a sale or prohibits from having a social guest in his dorm room. Plaintiffs have failed to demonstrate a probability that they will succeed in their argument that they are entitled under Pennsylvania law to be able to consummate sales to others or to conduct group commercial demonstrations in their rooms. The Landlord and Tenant Act does not specifically so provide and it is not a reasonable construction of the Act to read it to prohibit Penn State from limiting commercial transactions in its dormitory rooms to sales of goods to the occupants of the rooms.

■ Plaintiffs Del Valle, Varsics, Habacher, and Spiller do not reside in the residence halls at Penn State but seek to participate in the commercial activities sought to be conducted by the other plaintiffs. In *American Future Systems I* the Court of Appeals recognized that the First Amendment rights of the recipients of commercial speech are co-extensive with those of the makers of the speech. *American Future Systems v. Pennsylvania State University*, 618 F.2d at 257 n.16. Based on that case, the Court concludes that the non-resident plaintiffs have failed to show a probability that they will succeed on their claims that they must be permitted to enter residence halls to attend group demonstrations in the students' rooms and to consummate sales in those rooms.

The restriction on these Plaintiffs' ability to engage in commercial activity is even less than that placed on Plaintiffs Brubaker and Wingert. The non-resident plaintiffs are able to participate in an AFS demonstration in a common area in a residence hall but not in a dormitory room. The Court fails to see how this is a significant abridgment of any right of speech or association. Moreover, they may consummate a purchase of AFS goods anywhere except in a residence hall. It is not alleged that the university prohibits them from inviting an AFS representative to their own dwellings for demonstrations and sales. These Plaintiffs, therefore, are unlikely to convince the Court that these inconsequential restrictions violate their rights. *See Reid v. Barrett*, 467 F.Supp. 124, 128 (D.N.J.1979), *aff'd*, 615 F.2d 1354 (3d Cir. 1980) (Mem.).

Not only have all the Plaintiffs failed to demonstrate a sufficient probability of success on the merits of their litigation to justify the preliminary relief they seek, they have also failed to show that they will suffer irreparable harm if the preliminary relief they seek is denied. As indicated above, the restrictions placed on the Plaintiffs with respect to their ability to engage in the commercial transactions involved in this litigation are not substantial. AFS is permitted to conduct both group demonstrations and sales in the residence halls although the demonstrations are limited to common areas and the sales limited to sales to a resident in the resident's own room. Plaintiffs Brubaker and Wingert are free to conduct group demonstrations in common areas and may consummate sales to residents in the purchasers' rooms. Of course, both these classes of Plaintiffs are free to conduct whatever activities they wish at locations other than the residence halls. The non-resident plaintiffs are also free to attend demonstrations in the residence halls and may consummate sales at any other location. In short, the only restriction placed on any of these Plaintiffs is the precise location at which they are permitted to engage in certain commercial activities. The Court fails to see how regulations that merely control the location of an activity constitute irreparable harm since the Plaintiffs are free to conduct the activities they wish at other locations in close proximity to the residence halls.

Weighed against this lack of irreparable harm to the Plaintiffs is the very real possi-

bility of harm to Penn State and other residents of the halls. If the Court were to grant the preliminary relief requested by the Plaintiffs, there is a real possibility that the abuses that this Court found to have existed prior to the implementation of the regulations would resume. *See American Future Systems, Inc. v. The Pennsylvania State University*, 464 F.Supp. at 1256–58.

The final factor to be considered is the public interest, if any, involved in this case. The Court finds itself in agreement with the Defendants that there is no significant public interest involved in this case. What is primarily involved is the Plaintiffs' desires to engage in commercial activities for their pecuniary benefit. There is totally lacking the identifiable concrete public interest that must be present in order for that interest to be considered by the Court in ruling on Plaintiffs' request for preliminary relief. *See Continental Group v. Amoco Chemical Corp.*, 614 F.2d 351, 358 (3d Cir. 1980). What public interest is involved, namely the interests of other residents of the residence halls, weighs strongly against granting the Plaintiffs the preliminary relief they seek.

After a careful review of the allegations in the complaint and construing those allegations in a light most favorably to the Plaintiffs, the Court concludes that they are not entitled to the preliminary injunctive relief they seek. The Court is justified in making this determination without a hearing because it has accepted as true the factual allegations put forth by the Plaintiffs. If on that basis the Plaintiffs are not entitled to a preliminary injunction, the Court sees no reason to delay its disposition of the request.

Since the Court will deny the request for preliminary relief, there is no reason for this case to remain on the May 1981 trial list or for the settlement conference scheduled for April 3, 1981 to be held. It is the Court's view that an expedited hearing on the request for a permanent injunction is not appropriate. The case, therefore, will be placed on the September 1981 trial list.

Appropriate orders will be entered.