AMERICAN FUTURE SYSTEMS, INC., et al., Plaintiffs,

v.

The PENNSYLVANIA STATE UNIVERSITY, et al., Defendants.

Civ. No. 81–0171.

United States District Court, M. D. Pennsylvania.

Sept. 16, 1981.

Judgment Corrected Sept. 17, 1981.

As Amended Oct. 13, 1981.

Henry T. Reath, George E. Pierce, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Delbert J. McQuaide, R. Mark Faulkner, McQuaide, Blasko, Schwartz, Fleming & Faulkner, State College, Pa., for defendants.

## OPINION

MUIR, District Judge.

Plaintiffs filed this action alleging violations of their constitutional rights and of rights granted by Pennsylvania law on February 5, 1981. Jurisdiction is alleged to arise under 28 U.S.C. §§ 1331 and 1343 and the doctrine of pendent jurisdiction. Also on February 5, 1981, Plaintiffs filed a motion for a preliminary injunction which was denied by this Court in *American Future Systems v. Pennsylvania State University*, 510 F.Supp. 983 (M.D.Pa.1981). On July 17, 1981, Defendants filed a motion for summary judgment and supporting brief. On August 24, 1981, Plaintiffs responded, and on August 31, 1981, Defendants filed a reply. For the reasons set forth below, Defendants' motion for summary judgment will be granted.

This case is the second one before the Court involving policies of Pennsylvania State University (Penn State) relating to commercial activities in its dormitories. In the first lawsuit, judgment was granted in favor of Penn State upholding its regulations against an attack that they violated American Future Systems' (AFS) First Amendment rights. *American Future Systems, Inc. v. Pennsylvania State University*, 464 F.Supp. 1252 (M.D.Pa.1979), aff'd 618 F.2d 252 (3d Cir. 1980) (*"American Future Systems I"*).

AFS is a corporation whose principal business is the sale of cookware, china, crystal, and silverware through demonstrations of its merchandise at colleges throughout the United States. AFS seeks by this action to be permitted to present sales demonstrations at the invitation of individual students in the common areas and dormitory rooms within the residence halls of Penn State, to disseminate commercial information to groups of students through sales demonstrations at the invitation of individual host students in their individual dormitory rooms, and to consummate sales to individual students in the student hosts' rooms and residence halls of Penn State. Plaintiffs Wingert and Brubaker are Penn State students who formerly resided in Penn State residence halls. Wingert withdrew as a student at Penn State in February 1981 and is no longer enrolled. Brubaker, while still enrolled as a student, no long-

er resides in a Penn State residence hall. Wingert and Brubaker seek relief permitting them to invite AFS to common areas and their individual dormitory rooms and residence halls, to conduct in their rooms and in common areas of residence halls, sales demonstrations to groups of invited students and to invite AFS to their dormitory rooms for purposes of consummating sales of goods to other students following the demonstrations. Plaintiffs DelValle, Varsics, Habacher and Spiller are current Penn State students who do not reside in residence halls. DelValle, Varsics, Habacher and Spiller seek an order permitting them to attend and participate in AFS group demonstrations in common areas and dormitory rooms and to consummate sales from AFS in those rooms.

As this Court already held in its denial of Plaintiffs' motion for a preliminary injunction, the policy of Penn State during the time that *American Future Systems I* was litigated and now is that (1) AFS may conduct group demonstrations in specified common areas of each residence hall; (2) following those demonstrations a student may invite an AFS representative to the student's room to purchase AFS goods; (3) AFS is free to solicit invitations to individual students' rooms at the group demonstrations or by telephone or mail; (4) AFS is not permitted to conduct group demonstrations in an individual dormitory room; (5) AFS is not permitted to consummate sales in dormitory rooms to a purchaser other than the occupant of the room; (6) AFS is not permitted to conduct group solicitations of sales in the common areas of residence halls; (7) AFS is not permitted to consummate commercial transactions in the common areas of residence halls. *American Future Systems v. Pennsylvania State University*, 510 F.Supp. 983, 985 (M.D.Pa.1981). It is Plaintiffs' position that under the ruling of the Court of Appeals in *American Future Systems I* they are entitled to the relief sought in this action. Defendants are of the view that their policies relating to commercial activities in Penn State's dormitories are consistent with the Court of Appeals' opinion in *American Future Systems*

*I*, and that Plaintiffs are not entitled to relief.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions in the record, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Federal Rules of Civil Procedure. Because the bases for granting summary judgment are somewhat different as to Plaintiff AFS, to Plaintiffs Wingert and Brubaker, and to Plaintiffs DelValle, Varsics, Habacher and Spiller, AFS and each group of individual Plaintiffs will be discussed separately.

## I. AFS.

AFS's primary contention is that the decision of the Court of Appeals in *American Future Systems I* granted AFS certain rights that Penn State has abridged. To the contrary, the Court of Appeals' opinion contains no declaration of AFS's rights, and in that opinion the Court concluded that Penn State's policies governing commercial activity was wholly consistent with AFS's First and Fourteenth amendment rights. The Court of Appeals recognized that a total suppression of AFS's commercial speech would probably violate AFS's constitutional rights. *American Future Systems I*, 618 F.2d at 258. In holding that Penn State's distinction between non-commercial and commercial speech was valid, the Court of Appeals noted that Penn State had only restricted, rather than suppressed, speech. "[AFS] sales representatives are allowed into the residence halls to present demonstrations to groups of students, [but] they cannot consummate sales at these gatherings. Even that restriction is removed if the sales representative is invited to the hall by an individual student who decides to purchase the merchandise marketed by AFS." 618 F.2d at 258. There is a dispute as to whether the Court of Appeals' decision in *American Future Systems I* actually vests in AFS the *right* to set up group demonstrations of its products in the Penn State residence halls. However, inasmuch

as Penn State policies permit such group demonstrations, this Court need not reach that question. The issues now before the Court are (1) whether Penn State may limit AFS to presentations in common areas, as opposed to private rooms, and may limit AFS's actual solicitation to private rooms and not permit such solicitation in common areas; and (2) whether AFS's proposed presentation does in fact constitute solicitation, in whole or in part.

Penn State's policy governing commercial activity in its residence halls has remained unchanged since AFS made its initial attempts to conduct demonstrations of its products in 1977. Specifically, in effect at the time of the *American Future Systems I* litigation was Penn State's policy that AFS could present demonstrations, but not solicitations of sales in the common areas of residence halls, and that AFS is free to consummate commercial transactions (i. e. solicitation) in student's rooms, but not in common areas. *See American Future Systems I*, 464 F.Supp. 1252, 1258 (¶ 59); *American Future Systems v. Pennsylvania State University*, 510 F.Supp. 983, 985 (M.D. Pa.1981). The record shows that AFS was aware of this policy at the time that it filed the *American Future Systems I* action. *See American Future Systems I*, 464 F.Supp. at 1258 (¶ 59). AFS's attempt to relitigate the constitutionality of Penn State's policies regarding commercial activities in dormitories is barred by the doctrine of res judicata.

The doctrine provides that a party who has suffered an adverse judgment may not, in subsequent litigation against the same party, seek to relitigate any issue that was or *could have been* determined in the first action. *See Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). The purpose of this doctrine is to ensure finality in the adjudication of disputes and to provide a conclusive resolution not only of matters that were actually considered but also of all of those which could have been considered. *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 266 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).

In order for res judicata to apply, three elements must be present: (1) there must be an identity of parties; (2) there must be in existence a valid, final judgment on the merits by a Court of competent jurisdiction; and (3) the second action must concern the same subject matter or cause of action as the prior suit. *Sworob v. Harris*, 451 F.Supp. 96, 99–100 (E.D.Pa.) *aff'd* 578 F.2d 1376 (3d Cir. 1978) (memorandum). There can be no dispute as to the first two requirements. Here, AFS and the same Penn State defendants have been involved in both actions. Further, there is a final, valid judgment upholding Penn State's policy governing commercial activities in dormitories. As to the third requirement, the second action may be said to involve the same cause of action if liability is sought to be imposed on a different theory but based on the same "liability creating conduct" of the Defendant which gave rise to the first action. *Coggins v. Carpenter*, 468 F.Supp. 270, 280 (E.D.Pa.1979), *citing Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464 (3d Cir. 1950), *cert. denied*, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951). Based on the allegations of Plaintiffs' complaint, the exhibits attached thereto, and affidavits submitted in this matter, the Court concludes that AFS is complaining about the same conduct of which it complained in *American Future Systems I*, namely Penn State's regulations limiting access by AFS to the university's dormitories. The Court also concludes that AFS had in that action opportunity to present to the Court and to the Court of Appeals any claims it might have had as to the precise contours of the permissible scope of group demonstrations as well as any other matters relating to any other constitutional rights that may have been adversely affected by Penn State's policies. Since the Court of Appeals has already upheld the validity of Penn State's policies with respect to commercial activities within residence halls, and since AFS had a full and fair opportunity to litigate the validity of that policy, or any aspect thereof, in the first action, res judicata op-

erates to preclude AFS's challenge to that policy in this action. Therefore, summary judgment will be granted in favor of the Defendants as to AFS's claim that Penn State's policy with respect to commercial solicitation and activity in the dormitories violates AFS's First and Fourteenth Amendment rights.

AFS's second claim is that Penn State's position that it may censor the substance of AFS's demonstrations violates AFS's constitutional rights. Penn State contends that certain portions of the AFS demonstration involve the solicitation of sales rather than educational or informational material within the normal meaning of "demonstration." Penn State claims that these provisions which involve price, credit and guarantee terms, are properly considered commercial rather than educational in nature, and are therefore properly restricted to individual solicitation in private rooms and may be excluded from the demonstrations in common areas. (Defendants' Brief in Support of Motion for Summary Judgment at pp. 11–12.) AFS, in response, claims that if it were to present its demonstrations in the manner required by the University, it might appear to its listeners to be engaging in sharp business practices. AFS claims that if it is allowed to demonstrate and display its products, but is not allowed to give information regarding prices, guarantees, exchange policies and specially designed credit terms to fit students' budgets, its sales representatives' credibility as legitimate and honest people would be undermined. (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at pp. 8–9).

The Court of Appeals' decision in *American Future Systems I* specifically upheld Penn State's regulations to the extent that they rested upon a distinction between commercial and non-commercial speech. Addressing the question of solicitation and consummation of sales in common areas, the Court of Appeals first noted that Penn State had advanced reasonable objectives to support its ban on group commercial activity in its residence halls. Finding that Penn State had not acted in an arbitrary, capri-

cious, or invidious manner in distinguishing between commercial and non-commercial speech (i. e. solicitations as opposed to demonstrations), the Court concluded that Penn State's policies do not violate the First Amendment. *American Future Systems I*, 618 F.2d at 259. Thus, AFS's position that the Court of Appeals did not anticipate or recognize distinctions between educational programs and commercial solicitation (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p. 8) is clearly erroneous.

In *American Future Systems I*, this Court and the Court of Appeals were not faced with the question of whether particular aspects of AFS's presentations were educational or commercial. Thus, this aspect of AFS's claim is not barred by res judicata.

■ AFS's proposed presentation is evidenced by the cue cards that are attached to the complaint. The parties have agreed in their statement of material facts that the cue cards in Exhibit E of the complaint constitute substantially all of AFS's presentation. Cards 1 through 23 are clearly educational and instructional in nature, and it is permissible to convey this information at AFS's group demonstrations. Cards 24 through 31 relate to guarantee and payment plans offered to the students. These cards constitute solicitation of sales, and Penn State may constitutionally prohibit AFS from presenting this information as a part of its demonstrations. The material contained in cards 32 through 36 is informational and permissible. The material in the first paragraph of card 37 deals with the price of AFS's goods, and constitutes impermissible solicitation. The material contained in the remainder of card 37 and cards 38 through 51 is instructional and permissible. The material contained in cards 52 through 65, as well as those portions of cards 66 and 67 that involve distribution of contracts for purchase of AFS goods, involves impermissible solicitation.

The only portions of AFS's demonstration that are at issue in this segment of the lawsuit are those which the Court has found

to be impermissible pursuant to the Court of Appeals's ruling in *American Future Systems I.* Since there is no issue as to any material facts, summary judgment is appropriate. The Court will therefore enter summary judgment in favor of Defendants as to this issue.

## II. *Plaintiffs Brubaker and Wingert.*

Defendants first assert that the claims of Brubaker and Wingert are moot because Wingert has withdrawn from the university and Brubaker has not renewed his contract for a university dormitory room during the upcoming academic year. Plaintiffs, in an apparent attempt to solve the "mootness" problem, on August 31, 1981, filed a motion to join an additional Plaintiff. The proposed Plaintiff, Kevin Graves, is a present Penn State student who resides in a Penn State residence hall and who has notified Penn State of his intention to hold an AFS demonstration in his dormitory room on September 14, 1981. (Affidavit of Kevin Graves at pp. 1–2). Graves has not, to the Court's knowledge, been denied permission to hold the AFS demonstration in his dormitory room. (Memorandum of Law in Support of Plaintiffs' Motion to Join Kevin Graves as an Additional Plaintiff at p. 2). Since Graves has not yet been denied permission to hold the AFS demonstration, the Court doubts whether his dispute with Penn State is sufficiently ripe for the Court to adjudicate his claim. However, the Court will not dismiss Brubaker's and Wingert's claims on mootness grounds. Graves's claims will not materially alter the facts of this dispute and the Court will today dismiss the entire lawsuit. Therefore, the Court will consider the facts in the light most favorable to Graves and will grant Plaintiffs' motion that Graves be added as an additional Plaintiff. Graves's claims will be treated as identical to those of Brubaker and Wingert.

■ The definition of mootness is well settled: A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the lawsuit. *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Despite this definition, a claim is not moot even though the alleged violation is not presently in force or continuing, where the alleged violation or challenged conduct is capable of repetition, yet evading review. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Winsett v. McGinnis,* 617 F.2d 996, 1003 (3d Cir. 1980); *cert. denied, sub nom., Anderson v. Winsett,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981). Where individual Plaintiffs are suing, and there is no class action, the capable of repetition, yet evading review doctrine is limited to the situation where (1) a challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again. *Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), *citing Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). As defendants point out in their reply brief, the "capable of repetition yet evading review" doctrine is inapplicable if there is no reasonable expectation that the *same* Plaintiffs will be subject to the *same* policies again. (Defendants' Reply Brief at p. 5).

■ In order for the Court to grant summary judgment in favor of Defendants as to Plaintiffs Brubaker's and Wingert's claims, there must be no material issue of fact in dispute. As to Brubaker, Defendants claim there is no possibility that he will again be subject to Penn State's policies because Brubaker has not applied for dormitory space in 1981 and all rooms have previously been assigned to students making timely applications. Thus, Defendants conclude Brubaker will no longer be able to reside in a dormitory room, so his claim is moot. However, Plaintiffs deny that the dormitories are filled for the 1981–82 school year, so a material issue of fact exists as to whether Brubaker again will be able to live in a Penn State residence hall. Thus, a question remains as to whether Brubaker again will be subject to Penn State's policies regarding commercial transactions in

residence halls. Therefore, at least at this stage of the litigation, summary judgment may not be granted in Defendants' favor as to Brubaker's claims on mootness grounds.

As to Plaintiff Wingert, Defendants claim that since he is no longer a student at Penn State and he has not filed an application for readmission to the school, Wingert too will no longer be residing in a Penn State dormitory room, so his claim is not capable of repetition. Again, there is a material issue of fact in dispute. Wingert, by affidavit, states that he intends to re-enroll in Penn State as soon as possible and intends to live in the Penn State residence halls. Thus, as with Brubaker, Wingert's claims cannot be disposed of in Defendants' favor on mootness grounds, at least at this stage of the litigation.

Defendants are entitled to summary judgment as to Brubaker and Wingert on other grounds. Brubaker and Wingert seek relief permitting them to invite AFS representatives to common areas in the individual dormitory rooms, to conduct sales demonstrations to groups of invited students in their rooms and in common areas of residence halls, and to invite AFS personnel to their dormitory rooms for the purpose of consummating sales of goods to other students following the demonstrations. Brubaker and Wingert were not parties to *American Future Systems I,* and are not bound by the doctrine of res judicata by the decision in that case. However, *American Future Systems I* constitutes binding legal precedent insofar as the legal issues involved are concerned. This Court in *American Future Systems I* did not address the question of First Amendment rights of Penn State students who are desirous of receiving information about the products which AFS sells and concluded that AFS did not have standing to assert the rights of those students. *American Future Systems I,* 464 F.Supp. at 1259. AFS again raised the claim that the First Amendment rights of Penn State students were being violated by Penn State's policy with regard to commercial activities within dormitories on its appeal in *American Future Systems I.* The Court of Appeals, addressing that claim, stated that "[t]he analysis contained in the text [of *American Future Systems I*] concerning the legitimacy of the restriction on AFS group sales in the residence halls applies as well to students who desire to purchase AFS products at group meetings. Also, we reiterate that the Penn State policy does allow an individual student to invite a sales representative into his or her room for the purpose of individually purchasing goods." *American Future Systems I,* 618 F.2d at 257, n. 16. To the extent that Brubaker and Wingert base their First Amendment claims on the right to conduct the same types of demonstrations and sales that AFS seeks to conduct, they stand in no different position than AFS itself did in *American Future Systems I.* Indeed, Plaintiffs are in agreement with this position, stating that the student Plaintiffs' commercial free speech rights as listeners are reciprocal to AFS's rights, and *American Future Systems I* controls. (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p.13.) Since the Court of Appeals in *American Future Systems I* upheld the validity of Penn State's policy with regard to commercial activities in dormitories, and since Brubaker and Wingert stand on the same footing as did AFS, Penn State's policies do not violate Brubaker's and Wingert's First Amendment rights of commercial speech and Defendants will be granted summary judgment on this issue.

Brubaker and Wingert also assert that Penn State's regulations unconstitutionally inhibit their right of freedom of association arising under the First Amendment. Brubaker and Wingert claim that they have a fundamental right to associate themselves with one another and with AFS representatives in the setting of a group demonstration of AFS merchandise where all of them have the opportunity to hear and exchange information and views relating to AFS products, the effectiveness and fairness of the presentation, relevant price information, and also to consummate sales, if anyone so chooses. (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at pp. 17–18). Brubaker and

Wingert claim that Penn State's regulations infringe upon those associational rights. Brubaker and Wingert also claim that since the private dormitory room serves as a student's "home away from home," and the rooms are essentially equivalent to the "interior of a private home," the state lacks the power to control legal, nondestructive, freely formed associations within such rooms. (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p. 19.)

Plaintiffs conclude that since Penn State has failed to demonstrate a compelling state interest to sustain enforcement of its regulation on commercial activities in the dormitories, Penn State's regulations must fall.

While Plaintiffs make the argument that their associational rights stand on some different footing than their right as recipients of commercial speech, the Court is unpersuaded by this distinction. Indeed, as set forth in the Complaint, these associational rights are indistinguishable from the rights sought with respect to making group demonstrations and sales in dormitory rooms. In Count III of the Complaint, Plaintiffs list in broadside fashion their rights that have allegedly been violated: "[D]efendants have deprived said Plaintiffs of their rights of freedom of speech, privacy, and association under the constitution of the United States." Certainly, the primary purpose of the demonstrations is to encourage the attendees at the shows to purchase merchandise. *See American Future Systems I*, 464 F.Supp. at 1258 (¶ 58).

■ The Court finds unpersuasive Plaintiffs' argument that since the Court of Appeals stated that Penn State had only a "legitimate interest" in continued enforcement of its regulations and not a "compelling interest" Brubaker's and Wingert's associational rights have been violated. (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p. 20.) Where political-type relationships are impinged upon by regulation of the right to association, such regulation must be supported by a compelling state interest. *E. g. NAACP v. Alabama*, 357 U.S. 449, 460, 78

S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958). (Whether the beliefs sought to be advanced are political, religious, economic or cultural is immaterial). As is the case with commercial speech, commercial associational rights, even those which are economically motivated, are afforded some protection under the First Amendment. *E. g. International Union v. National Right to Work Legal Defense & Education Foundation*, 590 F.2d 1139, 1148 (D.C.Cir.1978). The Plaintiffs cite no authority for the proposition that commercial associational rights such as those which are at issue in this case are on equal footing with political associational rights. Quite to the contrary, the relationship between political and commercial associational rights is analogous to the relationship between political and commercial speech rights. As the Supreme Court held in *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978), commercial and political activities must be treated differently.

> We have not discharged the "common sense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. . . . To require a parity of constitutional protection for commercial and non-commercial speech alike would invite dilution, simply by a levelling process, of the force of the [First] Amendment's guarantees with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of non-commercial expression.

In *Ohralik*, the Court expressly held that commercial associational rights, while entitled to some constitutional protection, are subject to regulation in furtherance of important state interests. 436 U.S. at 458–59, 98 S.Ct. at 1919–20. *See Central Hudson Gas & Electric Corp. v. Public Service Com-*

*mission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Counsel*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

The Court of Appeals has already held in *American Future Systems I* that legitimate and important interests of Penn State are furthered by its policy of governing commercial activity in the dormitories. Penn State asserts that AFS group sales significantly affect the primary activities of college dormitories. Penn State argues that its residence halls are exclusively dedicated to providing a living environment which is conducive to activities associated with being a student and succeeding academically and that AFS's activity within the residence halls will disrupt the proper study atmosphere and privacy of students. These interests are important enough to sustain Penn State's policy as against a challenge based on the right of association. *American Future Systems I*, 618 F.2d at 256–57.

Moreover, the Court fails to see how the restrictions imposed on Brubaker and Wingert infringe in any material way on the right to associate. As indicated above, Brubaker and Wingert may engage in sales demonstrations in common areas, and may consummate sales in the rooms of people purchasing the products. Brubaker and Wingert are of course free to conduct more extensive commercial activities at locations other than the dormitory halls of Penn State. Given the close nexus between associational freedoms and freedom of speech, *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958), Brubaker and Wingert cannot demonstrate that the policy governing commercial · activity violates their associational rights. The Defendants will therefore be granted summary judgment on this issue.

Brubaker and Wingert also claim that Penn State's regulations impermissibly infringe on their constitutional right of privacy, which they assert requires that they be permitted to conduct the commercial activity they desire in the dormitory rooms. Bru-

baker and Wingert state that they seek to establish their rights to be let alone in their choice of whom they may invite to their rooms, or whom they choose to visit, in a lawful, nondisruptive manner. Brubaker and Wingert argue that because the privacy and associational rights are so closely intertwined in this case, if the regulations cannot withstand scrutiny with respect to associational claims, the regulations must fall on privacy grounds for the same reasons. (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at pp. 23–24.) The Court agrees with these Plaintiffs' statement that privacy and associational rights should be treated equally in this case, but concludes that neither associational *nor* privacy rights have been violated. *See Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

While the genesis of privacy rights is somewhat obscure, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), a fundamental right to be free from unwanted governmental intrusions is implicit in the constitution. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542 (1969). It is equally true that the constitutional right of privacy extends to a college dormitory room, *Piazzola v. Watkins*, 442 F.2d 284, 289–90 (5th Cir. 1971), as a college dormitory room is the equivalent of a student's "home away from home," *American Future Systems I*, 464 F.Supp. at 1262, and dormitory rooms are compared with the "interior of a private home," *Brush v. Penn State*, 489 Pa. 243, 414 A.2d 48, 51 (1980).

The fact that students have privacy interests in their dormitory rooms, however, merely begins the inquiry. The Supreme Court has recognized two kinds of privacy that are constitutionally protected. The first protects the individual from disclosure of certain matters and the second protects the individual from unwarranted governmental intrusion when the individual seeks to make certain personal decisions. *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869,

876–77, 51 L.Ed.2d 64 (1977). Only the latter interest is relevant in this case. That interest, however, has been restricted to so-called fundamental matters "relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). The Plaintiffs, in apparent recognition of the fact that privacy rights established by Supreme Court decisions do not extend to the facts of this case, state that "the fact that certain aspects of the student-plaintiffs' privacy claims have not previously been considered and recognized by the Supreme Court does not preclude such recognition, by this Court." (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p. 24.) This case does not involve some intrusion into Brubaker's and Wingert's ability to make decisions about personal matters of a fundamental nature; nor does Penn State's policy preclude personal relationships, since it affects only relationships for commercial purposes at certain locations. Further, it is not apparent how the shifting of a group demonstration from a dormitory room to a common area imposes any infringement at all upon Brubaker's and Wingert's freedom of thought, action, or belief. Moreover, any conception that privacy doctrines include the right to invite ten or more persons into one's room for a commercial demonstration is inconsistent with the notion of the "right of privacy" under Supreme Court case law. For these reasons, the Court declines Plaintiffs' invitation to expand the right of privacy in this case. Since Defendants have shown that, as a matter of law, Plaintiffs' right of privacy has not been violated by Penn State's policy regarding commercial activities in dormitories, Defendants will be granted summary judgment as to this aspect of the case.

 Brubaker and Wingert also claim that Penn State's policies abridge their rights under Pennsylvania Landlord and Tenant Law. Under § 504–A of the Landlord-Tenant Act, 68 P.S. § 250.554 (Supp. 1981), a tenant has the right to invite to his apartment or dwelling units such employees, business visitors, tradesmen, deliverymen, suppliers of goods and services, and the like as he wishes. Further, the tenant has the right to invite to his dwelling for reasonable periods of time social guests, family members and visitors. "It is the intent of this article to insure that the landlord may in no way restrict the tenant's right to purchase goods, services and the like from the source of the tenant's choosing . . ." 68 P.S. § 250.554. There is some controversy as to whether Pennsylvania's Landlord-Tenant Act is applicable to Penn State's dormitories. Even assuming that the Act is applicable to Penn State's dormitories, Brubaker and Wingert have not demonstrated that Penn State's regulations with regard to commercial activities in its dormitories violates the Act. Penn State does not prohibit Brubaker and Wingert from inviting an AFS representative to their rooms to make a sale. Penn State also does not prohibit Brubaker and Wingert from having social guests in their dormitory rooms. No reasonable construction of the Landlord-Tenant Act leads to the conclusion that Brubaker and Wingert are permitted to engage in broad commercial transactions in Penn State's dormitories. Thus, as a matter of law, Brubaker's and Wingert's rights under Pennsylvania's Landlord-Tenant Act have not been violated. Summary judgment will therefore be granted to Defendants on this issue.

### III. *Plaintiffs DelValle, Varsics, Habacher, and Spiller.*

DelValle, Varsics, Habacher and Spiller are Penn State students who do not reside in Penn State residence halls. They seek an order permitting them to attend and participate in AFS group presentations in common areas and dormitory rooms and to consummate sales from AFS in those rooms. (Complaint, Count IV.) These Plaintiffs were allegedly invited by Brubaker and Wingert to attend AFS demonstrations in private dormitory rooms. When Penn State ordered that these demonstrations not take place, on the ground that they were violative of Penn State's regulations re-

garding commercial activities in dormitories, these Plaintiffs claimed that their right to attend those demonstrations was violated.

In *American Future Systems I*, the Court of Appeals recognized that the First Amendment rights of the recipients of commercial speech are co-extensive with those of the speaker. *American Future Systems I*, 618 F.2d at 257 and 257 n. 16. The restriction on these Plaintiffs' ability to engage in commercial activity is even less than that placed on Brubaker and Wingert. The non-resident Plaintiffs are able to participate in an AFS demonstration in a common area of the residence hall but not in a dormitory room. Moreover, they might consummate a purchase of AFS goods anywhere except in a residence hall. It is presumed that Penn State cannot and does not prohibit these Plaintiffs from inviting an AFS representative to their own dwellings for demonstrations and sales. Thus, the Court fails to see how Penn State's regulations limiting commercial activities in its dormitories constitute any significant abridgement of these Plaintiffs' rights of speech, privacy, and association. Since these Plaintiffs have available all the alternative means of access to information about AFS products, the inconsequential restrictions imposed by Penn State's regulations cannot be considered to be violations of these Plaintiffs' First Amendment rights. *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977). *Reid v. Barrett*, 467 F.Supp. 124, 128 (D.N.J.1979), *aff'd* 615 F.2d 1354 (3d Cir. 1980); *Connecticut State Federation of Teachers v. Board of Education Members*, 538 F.2d 471, 479 (2d Cir. 1976). Defendants are therefore entitled to summary judgment as to these Plaintiffs' claims.

## IV. *Arbitrary Enforcement of Penn State's Regulations.*

Plaintiffs' final claim is that Defendants in violation of Plaintiffs' due process rights, have not enforced the challenged regulations in an even-handed, fair, and non-arbitrary manner. Plaintiffs argue in support of their due process claim that *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), stands for the proposition that "the touchstone of due process is protection of the individual against arbitrary action of government." *See also Chung v. Park*, 514 F.2d 382, 387 (3d Cir. 1975).

As Plaintiffs admit, "of course, the predicate of a due process claim is governmental violation of a person's liberty interest." (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p. 26, *adopting* Plaintiffs' Memorandum of Law in Support of Motion for a Preliminary Injunction at pp. 34–35.) It is certainly the case that were it established that Plaintiffs' constitutional rights of free speech, association and privacy were violated by Penn State's enforcement of its regulation regarding commercial activity in dormitories, this violation of Plaintiffs' rights would be within the zone of protected interest under the Fourteenth Amendment. *E. g. Madera v. Board of Education*, 386 F.2d 778, 783–84 (2d Cir. 1967), *cert. denied*, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968), *citing Allgeyer v. Louisiana*, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). However, the Court has found that Penn State's enforcement of its dormitory regulations does not violate any of Plaintiffs' collective constitutional rights or rights under Pennsylvania state law. Thus, even if Penn State's regulations were enforced in an arbitrary manner Plaintiffs' due process rights would not have been violated.

In addition, Plaintiffs' complaint and supporting affidavits aver insufficient facts to support a claim of discriminatory enforcement of Penn State's policies. In this circuit, civil rights complaints must set forth facts with specificity, *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976), and this complaint fails to do so. Plaintiffs, in a conclusory manner, in Count II of their complaint, state that "by enforcing their stated policy, which purports to exclude from university residence halls all persons seeking to demonstrate or sell mer-

**556**

chandise, in an arbitrary, capricious, selective, discriminatory, and unreasonable manner, Defendants have deprived Plaintiffs of their rights to due process under the Fourteenth Amendment of United States Constitution." (Complaint, Count II). The sole evidence now advanced in support of its allegation is the affidavit of Joseph Healey, which states in part:

> Ms. Peterson explained that the University cannot monitor the residence halls at all times. Therefore, there may be illegal presentations going on that the University does not know about. However, when the university becomes aware of an illegal presentation through a student complaint or other means, they enforce the rule.

This hardly establishes arbitrary and capricious enforcement of Penn State's policies. Indeed, it appears to establish consistent enforcement of the policies as soon as the university is made aware of violations of its rules. Since Plaintiffs have failed to state a claim upon which relief can be granted with respect to this due process claim, summary judgment will be granted in Defendants' favor on this issue.

## V. *Conclusion.*

The Plaintiffs have not established that Penn State's enforcement of its regulations with regard to commercial activity in its dormitories violates any of the Plaintiffs' constitutional rights or rights under Pennsylvania state law. Since there is no dispute of any material issue of fact in this case, Defendants' motion for summary judgment will be granted.

An appropriate order will be entered.