688 F.2d 907
 6 Ed. Law Rep. 888
 AMERICAN FUTURE SYSTEMS, INC., Steven Brubaker, Richard J.
Wingert, W. Bruce Del Valle, Joan D. Varsics,
Dennis C. Habecker, Kevin Graves and
John B. Spillar, Appellants,
v.
The PENNSYLVANIA STATE UNIVERSITY, Board of Trustees of the
Pennsylvania State University, John W. Oswald, and
M. Lee Upcraft.
 No. 81-2674.
 United States Court of Appeals,
Third Circuit.
 Argued April 2, 1982.
Decided Aug. 9, 1982.
Rehearing and Rehearing In Banc Denied Sept. 21, 1982.
As Amended Aug. 13, 1982.
Certiorari Dismissed Dec. 17, 1982.
See 103 S.Ct. 583.
 
 Henry T. Reath (argued), George E. Pierce, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for appellants.
 Virginia Lynn Hogben, Philadelphia, Pa., for amicus curiae American Civil Liberties Foundation of Pa.
 Carl N. Martin, II, Philadelphia, Pa., for amicus curiae Com. Ass'n of Students, Associated Students of Kan., Cal. State Student Ass'n, Student Ass'n of State University of N. Y.
 Ronald H. Sinzheimer, Albany, N. Y., for amicus curiae Student Ass'n of State University of N. Y.
 Delbert J. McQuaide, R. Mark Faulkner (argued), McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., State College, Pa., for appellees.
 Before GIBBONS, SLOVITER and BECKER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Plaintiff American Future Systems, Inc. (AFS) filed suit against Pennsylvania State University, its trustees and agents (jointly referred to as Penn State) alleging that Penn State's application of its policies relating to commercial activities in the common areas of its student residence halls violated its First and Fourteenth Amendment rights to free commercial speech as established by this court in an earlier opinion. Several students at Penn State also joined as plaintiffs alleging that Penn State's policies with regard to activities in the common areas and in the dormitory rooms violated, inter alia, their noncommercial free speech rights and right to privacy. Plaintiffs appeal the district court's grant of defendants' motion for summary judgment. We reverse and remand.
 
 I.
 BACKGROUND
 
 2
 AFS is a corporation which engages in the sale of cookware, crystal, and tableware through demonstrations of its merchandise at colleges throughout the United States. These demonstrations are attended by a student hostess, invited guests and a sales representative. Four of the student plaintiffs, Bruce Del Valle, Joan D. Varsics, Dennis C. Habecker and John B. Spillar, are current Penn State students who do not reside in the University residence halls. Plaintiff Kevin Graves is a Penn State student who currently resides in the residence halls. Plaintiffs Steven Brubaker and Richard J. Wingert were living in the University residence halls at the time the action was filed.[1] It is conceded that as long as one plaintiff is a student who resides in the residence halls to which the contested regulations apply, the issues are properly before us.
 
 
 3
 In the prior opinion rendered in the earlier action brought by AFS we described Penn State's policies and regulations covering commercial activities in its dormitories in detail. See American Future Systems, Inc. v. Pennsylvania State University, 618 F.2d 252 (3d Cir. 1980) (American Future Systems I ). These regulations and policies have not changed to any significant extent. App. at 322a. In summary, the student housing contract provides "(t)he conducting of any business enterprise for personal profit is prohibited in or around the university operated units." The student handbook states:
 
 
 4
 "The institution ... has rights and responsibilities of its own. The rights and responsibilities of the institution include: ... (the) (r)ight to prohibit individuals and groups who are not members of the University community from using its physical and operating facilities for commercial ... activities."
 
 
 5
 "Lectures, concerts, demonstrations, displays, or exhibits may not be used in any manner as a means of promoting commercial companies, products, or services."
 
 
 6
 "The word 'commercial' ... means any activity or event which results in personal financial gain to the peddler or organization thereof, provided that contact between a peddler and a student shall not be deemed commercial if such contact was invited by the individual student involved."
 
 
 7
 "Persons who are not students or employees of the University, while on University property, are required to ... abide by University policies and regulations."
 
 
 8
 618 F.2d at 253 (citations omitted).
 
 
 9
 Penn State's interpretation of these policies and regulations as relevant to the issues in this case is set forth in its brief as follows: "Under that policy, AFS may conduct group demonstrations of its products in common areas of Penn State residence halls. No solicitation of sales or sales may occur in those demonstrations. Following that demonstration, or by direct mail or telephone, AFS may secure invitations from a student to solicit sales and sell merchandise to that student in his or her dormitory room." Brief of Appellees at 5.[2] AFS challenges the manner of application of the regulation to the demonstrations in common areas of the residence halls. The student plaintiffs challenge the preclusion of demonstrations in the dormitory rooms. The issues will be considered separately.
 
 II.
 AFS'S CHALLENGE
 
 10
 In American Future Systems I, AFS had challenged Penn State's regulation of group commercial activities in the residence halls. AFS had conducted and scheduled future demonstrations in the residence halls of Penn State. As part of such demonstrations, AFS conducts other solicitation activity including door-to-door visits accompanied by the student hostess to seek guests for the demonstration. The demonstrations were halted by University officials because they violated the policy banning commercial activity. "When AFS protested that it had a constitutional right to solicit sales within the residence halls, a Penn State official told AFS that it would be permitted to conduct the demonstration portion of its show if no attempts were made to sell merchandise to the students during the presentation. AFS rejected that arrangement, stating that the sales portion was absolutely crucial." 618 F.2d at 254 (footnote omitted). In affirming the judgment entered in Penn State's favor, we emphasized that Penn State had not "totally suppressed" commercial speech, but "merely restricted that speech somewhat." Id. at 258. We stressed that "not only is AFS free to sell its goods elsewhere than in the residence halls, it can even enter those halls, upon invitation, and set up group demonstrations of its products. All that it is restricted from doing is actually completing in those halls its desired commercial transactions." Id. at 259.
 
 
 11
 Shortly thereafter, AFS requested that Penn State permit it to conduct group demonstrations in individual students' rooms. App. at 20a. Under its proposed scheme actual consummation of sales would occur in the purchaser's own room on a one-on-one basis. Penn State rejected this proposal on the ground that such activity would not conform with University policy. Id. at 22a.[3] AFS then proposed that it be permitted to present group demonstrations in the common rooms of the residence halls. App. at 29. It forwarded to the University a copy of the printed text (consisting of 76 cue cards) of its proposed presentation and explained that the material contained in cards 1 through 67 would be presented in the group demonstration, whereas the material in the remaining cards would be "modified for a one on one closing transaction." Id. at 30a. Thereafter, University officials reviewed the cards and determined that although "the presentation does contain much material of an educational nature which would be permitted," certain of the material contained "an outright group commercial solicitation which is contrary to University policy." Id. at 69a. In a letter to AFS, dated November 20, 1980, Penn State's counsel enumerated which material-primarily those cue cards containing price, guarantee and payment plan information-was not permissible.[4]
 
 
 12
 In this action for injunctive and declaratory relief, AFS seeks an order "requiring the University to comply with this court's prior interpretation of the effect of its regulations" and thus to allow AFS to present uncensored group demonstrations in the common areas of the residence halls upon invitation by a resident student and to consummate sales on a one-on-one basis with a student who has invited an AFS representative back to his or her private dormitory room. The district court denied plaintiffs' motion for a preliminary injunction without a hearing, American Future Systems, Inc. v. Pennsylvania State University, 510 F.Supp. 983 (M.D.Pa.1981), and subsequently, again without giving plaintiffs a hearing, granted Penn State's motion for summary judgment. American Future Systems, Inc. v. Pennsylvania State University, 522 F.Supp. 544 (M.D.Pa.1981).
 
 
 13
 AFS argues that Penn State's refusal to allow it to present uncensored sales demonstrations in the common areas of University residence halls is violative of its First Amendment rights and contrary to this court's prior interpretation of what commercial activity Penn State may permissibly prohibit in its residence halls. The district court rejected these contentions primarily on the ground that they were barred by the doctrine of res judicata. It construed AFS's claims as an attempt to relitigate claims which either were advanced and decided in the first action or which could have been advanced. 522 F.Supp. at 548. It rejected AFS's claim that the University's attempt to censor its sales demonstrations was violative of the First Amendment on the ground that this court had "specifically upheld Penn State's regulations to the extent they rested upon a distinction between commercial and non-commercial speech." Id. at 549. Finding that "the question of whether particular aspects of AFS's presentations were educational or commercial" was not barred by res judicata, the district court independently examined the 67 cue cards at issue and found that those cards containing price, credit and guarantee terms constituted impermissible solicitation. It therefore, upheld Penn State's prohibition of cards 24-31, the first paragraph of card 37, 52-65, and portions of cards 66-67. See note 4, supra.
 
 
 14
 We disagree with the district court's conclusion that the claims advanced by AFS in this appeal are barred by res judicata. At the time of our prior decision, there had been no attempt by the University to censor AFS's sales demonstrations by prohibiting those portions of its demonstration containing information relating to the price of AFS's products and the company's credit and guarantee terms. The parties have agreed in oral argument before us that no issue as to the contents of the demonstration, as distinguished from the consummation of the transaction, was involved in the first action.
 
 
 15
 It is important at the outset to clarify which issues are not before us. Although AFS construes our decision in American Future Systems I as having established its constitutional free speech right to conduct demonstrations of a commercial product in common areas within the University's residence halls, we do not read that opinion so broadly. Penn State has not sought to bar all commercial activity from its residence halls. It has limited what ostensibly appears to be such a ban through its definition of "commercial" which excludes student contact with a peddler "if the contact was invited by the individual student involved." Therefore we need not decide whether a state University may properly ban all commercial activity in its residence halls. Similarly, AFS does not challenge the distinction which the earlier opinion made between an actual consummation or completion of the "commercial transaction" and a group demonstration of AFS's products. 618 F.2d at 258-59. Instead it seeks only to conduct the demonstration in the common areas without censorship of the contents of that demonstration.
 
 
 16
 Finally, although the University has conceded that portions of the demonstration may have some educational value, and it and the district court sought to draw the line between those portions of the demonstration which they deem educational and those portions which they deem commercial, it is unmistakable that the demonstration is geared to the sales of the products and represents commercial speech.[5] Thus the only issue is whether Penn State may censor the content of AFS's commercial speech conducted in the dormitory common rooms where AFS has been permitted by the University to conduct its sales demonstrations.
 
 
 17
 The principle that commercial speech is protected from unwarranted government interference by the First Amendment, as applied to the states through the Fourteenth Amendment, was established in Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). That protection extends to price information as well as advertising. See Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Commercial speech, however, allows greater regulation than non-commercial speech, Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 455-56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).
 
 
 18
 In Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), the Supreme Court summarized the constitutional test for restrictions on commercial speech as follows:
 
 
 19
 For commercial speech to come within (the First Amendment), it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the government interest asserted and whether it is not more extensive than is necessary to serve that interest.
 
 
 20
 In Ad World, Inc. v. Township of Doylestown, 672 F.2d 1136, 1139 n.6 (3d Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1982), we stated that advertisements may be regulated to insure their truthfulness and to prevent harm to the public. See also Beneficial Corporation v. F. T. C., 542 F.2d 611, 619 (3d Cir. 1976), cert. denied, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), ("the remedy for the perceived violation can go no further in imposing a prior restraint on protected commercial speech than is reasonably necessary to accomplish the remedial objective of preventing the violation").
 
 
 21
 In the instant situation, there has been no allegation that AFS's commercial speech activities are fraudulent, misleading or otherwise unlawful. As the Supreme Court emphasized in Central Hudson :
 
 
 22
 The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.
 
 
 23
 447 U.S. at 564, 100 S.Ct. at 2350.
 
 
 24
 We, therefore, must first determine whether the University has advanced a substantial government interest to be achieved by the restrictions at issue. The only interest advanced by Penn State for precluding information on the price of the company's products and the nature of the contract it enters into with purchasers is that asserted in the prior action before this court-i.e. its interest in maintaining the proper study atmosphere in its dormitories and in protecting the privacy of the students residing in those facilities. Restrictions on the contents of the demonstration as distinguished from the conduct of the demonstration cannot further these interests. The Supreme Court cases provide ample precedent for the proposition that price information has value. See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. at 754, 96 S.Ct. at 1821; Bates v. State Bar of Arizona, 433 U.S. at 364, 97 S.Ct. at 2699. The University does not contend that the mere act of convening a group in the common areas of the residence halls is inimical to the study atmosphere since its policy permits such group activity. We conclude that Penn State has failed to show a substantial state interest, much less a plausible explanation, for its policy differentiating between the nature of the information contained in the AFS demonstration. We therefore reverse the summary judgment entered in Penn State's favor.III.
 
 STUDENTS' CLAIM
 
 25
 The claims of the students vary from that asserted by AFS. In January 1981, plaintiffs Wingert and Brubaker each informed the University that, with the consent of their roommates, they would be hosting a group demonstration of AFS products in their individual dormitory rooms. App. at 71a, 73a. Plaintiffs Del Valle, Varsics, Habecker, and Spillar were invited and planned to attend the group demonstrations. Penn State informed both Wingert and Brubaker that they would not be permitted to host such presentations in their dormitory rooms, but would be allowed to host the demonstration in a common room of the residence hall if the demonstration did not involve "a solicitation to purchase or a sale of any products." Id. at 72a, 74a. A common room was reserved by the University for each student's use. Id. The students joined this action, seeking relief permitting them "(1) to make purchases in a group setting, if they so desire, at a demonstration presented in a common room within the residence halls, and, in addition, (2) to host and participate in informational and sales demonstrations in a student's private dormitory room, including the right to complete a sales contract at that time in the group setting or, at their option, to make a purchase at a later time in a private setting." Appellants' brief at 25.
 
 
 26
 The students' claim directed to the distinction which the University makes between the demonstration and consummation of the transaction in the common areas is one that was before this court in American Future Systems I. In granting summary judgment against the student plaintiffs, the district court recognized that they were not parties to American Future Systems I and are not bound by the doctrine of res judicata by the decision in that case. 522 F.Supp. at 551. Nonetheless, the court considered that our prior decision constitutes binding legal precedent insofar as the legal issues are concerned. We also are bound by the prior panel opinion. Internal Operating Procedures of the Third Circuit, Ch. VIII. C. (1980). Fairly read, the court in American Future Systems I sustained the validity of the distinction between the demonstration and the consummation of the transaction, and it did so after considering not only AFS's right to deliver the speech but the "students' rights to take part in the sales there." See 618 F.2d at 257 n.16. Therefore, the district court did not err in rejecting the students' claims with respect to the demonstration in the common areas.
 
 
 27
 The students also challenge the University restriction of the use to which they may put their dormitory rooms by preventing the group demonstrations. They invoke their rights to free speech, associational interests, privacy, due process, and section 504-A of the Pennsylvania Landlord Tenant Act. Each of these claims was rejected by the trial court in granting summary judgment for Penn State. We focus primarily on the students' claimed right of free speech and associational interests.
 
 
 28
 The students argue that they have established by affidavit that the primary reasons for desiring to participate in the AFS presentations were educational, social, and cultural rather than commercial, that the district court failed to consider their noncommercial free speech rights, and that such rights deserve a higher level of protection than commercial speech. They claim that "the state must demonstrate a compelling state interest for the regulation" and that the regulation must be narrowly drawn. The Amicus American Civil Liberties Union argues that to the extent Penn State's regulations prohibit students from gathering in their own dormitory rooms to hear AFS's presentations, they violate the First Amendment because the "interest in protection of privacy and study atmosphere, whatever its sufficiency as grounds for the university's restrictions on use of the common rooms, does not meet constitutional requirements as a justification for prohibitions against students hearing commercial presentations in a student's own room." American Civil Liberties Union Brief at 8.
 
 
 29
 The district court does not appear to have considered the students' associational and free speech rights in the activities in their dormitory rooms independently from the activities conducted in the common areas. In its argument before us, Penn State represented that all organized group activity is prohibited in the dormitory rooms and must be conducted in the common areas, and that this policy applied to political as well as commercial activity. If this were the case, Penn State may indeed have a satisfactory reason for distinguishing between group activity in individual dormitory rooms and in common areas which can be observed by others. Such reasons may relate to the safety and well being of the students and the facility by which their security can be protected. The difficulty is that on this record we do not know whether there is a blanket prohibition against all organized group activity, and there have been no findings made by the district court as to the basis for such a prohibition.
 
 
 30
 It is undisputed that even speech entitled to the highest First Amendment protection may be subject to reasonable time, place, and manner regulations that are content-neutral, serve a significant governmental interest, and that leave open ample alternative channels for communication of the information. Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647-48, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). In this case the absence of any record on this issue and any findings by the district court makes this an inappropriate case for summary judgment. The University's reliance on the need to preserve a study atmosphere, asserted also in defense of this regulation, is unsupported by any evidence in this record and there is no basis to bind the students, who were not parties in the prior litigation, by any evidence which may be on record in that case. Therefore we will not speculate about the validity of the line drawn by the University between activity in the common areas of the dormitory and the dormitory rooms themselves.
 
 
 31
 As the district court found, plaintiffs' due process claim depends on finding some predicate right in the form of a liberty interest. Since the district court had rejected plaintiffs' proffered free speech right, it concluded there was no such liberty interest implicated. Since we have concluded that it was inappropriate to grant summary judgment against the student plaintiffs on this ground, it follows that the district court will need to reexamine the plaintiffs due process claim. At that time, plaintiffs may seek to amend the complaint to provide, if they can, the specificity which the district court found lacking.
 
 
 32
 Because we must remand this matter to the district court, we will also reach for its guidance the students' contention that the Penn State policies violate their constitutional right to privacy which encompasses their right to receive visitors in their dormitory rooms and to be received as a visitor in the privacy of a fellow student's room. We have previously commented that "the full measure of the constitutional protection of the right to privacy has not yet been delineated." United States v. Westinghouse Electric Corp., 638 F.2d 570, 577 (3d Cir. 1980). In Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) the Supreme Court referred to two types of privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." The latter decisions have encompassed "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). An individual student's right to privacy is not abrogated because the student has chosen to live in a University dormitory. On the other hand, the intimate personal nature of the rights previously accorded privacy protection is a far cry from the right asserted here, the right to host and attend a demonstration of cookware. We are unwilling to extend the constitutional right of privacy to commercial transactions completely unrelated to fundamental personal rights and therefore affirm the district court's rejection of that basis of plaintiffs' claims.[6]
 
 
 33
 For the foregoing reasons, we will reverse the grant of summary judgment for the defendants and will remand this matter to the district court for further proceedings consistent with this opinion.
 
 SUR PETITION FOR REHEARING
 
 34
 Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER and BECKER, Circuit Judges.
 
 
 35
 The petition for rehearing filed by appellees, The Pennsylvania State University, Board of Trustees of The Pennsylvania State University, John W. Oswald and M. Lee Upcraft, in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 OPINION SUR PETITION FOR REHEARING
 
 36
 SLOVITER, Circuit Judge.
 
 
 37
 Under ordinary circumstances, the petition for rehearing and for rehearing in banc filed by appellees ("Penn State") which raises issues previously raised and rejected by an undivided panel of this court in its decision would not warrant any comment in conjunction with the order denying said petition. However, because five members of this court have joined in a statement which does not suggest that the panel's statement of the applicable law is incorrect, and have nonetheless voted for rehearing in banc notwithstanding our general policy to the contrary, see Internal Operating Procedures of the Third Circuit, Ch. VIII. B (1980), this may create some confusion when the case is remanded to the district court. Therefore a reiteration of the issues raised in the appeal, addressed in the opinion and decided by the court is called for.
 
 
 38
 The statement of Judge Adams that the opinion in this case may cause state universities to "lose a significant portion of their control over commercial activity on their campuses" overstates the issue, the record and the opinion in this case. Neither in AFS I nor AFS II was this court presented with the issue of the scope of a state university's power to close its residence halls to all commercial activity.
 
 
 39
 The issue decided by the court in AFS I was the validity of the distinction made by Penn State between the group demonstration and the consummation of sales. All of the parties, including counsel for Penn State, agreed at oral argument before this court that the issue of Penn State's restriction on the content of the group demonstration had not been raised or decided in AFS I. In AFS II, the court was faced with that issue, the right of the university to review the material which AFS would present in the group demonstration and to prevent AFS from including material referring to price, guarantee and payment plans in its group demonstration. Since the restriction which Penn State has placed on AFS is a content-based restriction on the material that it may include in its group demonstration, Judge Adams' statement that "The primary restriction (placed on plaintiff) appears to be that sales may not be consummated in the common areas of a dormitory" is surprising. Furthermore, a content-based restriction can hardly be characterized as a "minimal limit".
 
 
 40
 The suggestion implicit in Judge Adams' statement that the opinion in AFS II may narrow the range of options open to a state university interested in resisting use of the school premises to promote sales of merchandise overlooks the significant fact that Penn State, for whatever reason, has not resisted such sales. The record and the opinion in this case show that Penn State permits group demonstrations in common areas and consummation of the commercial transaction in the individual students' rooms. The district court granted summary judgment for Penn State on the challenge by AFS to Penn State's actions in restricting the content of the group demonstrations in common areas and on the students' challenge to the prohibition of group demonstrations in their dormitory rooms. AFS II held the summary judgment as to the AFS claim could not be upheld because Penn State had "failed to show a substantial state interest, much less a plausible explanation, for its policy differentiating between the nature of the information contained in the AFS demonstration." American Future Systems, Inc. v. The Pennsylvania State University, 688 F.2d 907, at 913 (3rd Cir.1982). It also held that there was no evidence in the record to justify the restriction with regard to the dormitory rooms because Penn State had not introduced any relevant evidence in this case in that regard. Id. at 915.
 
 
 41
 The opinion can hardly be considered to have enunciated either a new or disputed legal principle by requiring that a state university desirous of regulating commercial speech must show that such regulation furthers substantial state interests. In the most recent Supreme Court decision omitted from the series of cases referred to by Judge Adams, the Court cautioned that although a state may regulate commercial speech, "the First and Fourteenth Amendments require that they do so with care and in a manner no more extensive than reasonably necessary to further substantial interests." The Court stated that states retain the authority to regulate advertising that "is inherently misleading or that has proven to be misleading in practice" and to promulgate "carefully drawn restrictions" which further other substantial state interests. In re R- M. J-, 455 U.S. 191, 207, 102 S.Ct. 929, 939, 71 L.Ed.2d 64 (1982). See also Ad World, Inc. v. Township of Doylestown, 672 F.2d 1136, 1139 n.6 (3d Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1982).
 
 
 42
 The decision in this case leaves open to Penn State the opportunity on remand to produce evidence to show a substantial state interest to support its policy. In light of the incomplete record in this case and the preliminary stage at which this issue reached the court, it would hardly promote judicial economy and efficiency to have in banc consideration of the abstract issue alluded to by Judge Adams with respect to a state university's power to resist commercial activity.
 
 
 43
 Judge ADAMS dissents from the denial of rehearing, and makes the following statement:
 
 
 44
 Prior to 1975, commercial speech had no sanctuary in the First Amendment. Then in Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), the Supreme Court held that the First Amendment protected the right of a Virginia newspaper to run advertisements which announced that abortions were legal in New York and offered the services of a New York referral agency. The statute in question banned all publications that prompted the procuring of an abortion. The court emphasized the great public interest in the subject matter. A year later, in Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Court relied on Bigelow to hold that a Virginia statute that completely barred pharmacists from advertising the sale of prescription drugs was unconstitutional. A primary reason for this result was the Court's concern that "the poor, the sick, and the aged" might be substantially disadvantaged by this law. The lack of important information regarding needed medication could seriously limit their "enjoyment of basic necessities (of life)." 425 U.S. at 763-64, 96 S.Ct. at 1826-1827.
 
 
 45
 The Supreme Court's next decision in this area was Bates v. State Bar, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), which struck down an Arizona Supreme Court rule which completely prohibited any advertising by a lawyer. One of the essential predicates of the Bates decision was that many citizens in Arizona and elsewhere were not obtaining legal assistance even when they needed counsel because of their fears regarding the price of such advice or because of their inability to locate a competent attorney.
 
 
 46
 In Ohralik v. Ohio State Bar, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the court ruled that a state may forbid in-person solicitation of prospective clients by lawyers for pecuniary gain, and noted the distinction between commercial and noncommercial speech. Speaking for the Court, Justice Blackmun said:
 
 
 47
 We have not discarded the "commonsense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. Virginia Pharmacy. To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial (expression).
 
 
 48
 In our case, a governmental unit, here a state university, has not barred completely any advertising regarding plaintiff's products. Nothing prevents the plaintiff from communicating price information by placing signs on the school's bulletin boards or mailing circulars to the students, or even coming on the premises and presenting their merchandise to the students. The primary restriction seems to be that sales may not be consummated in the common areas of a dormitory. Penn State apparently has attempted to implement this restriction by placing minimal limits on the format of the group demonstration. No one has shown the great need for permitting sales of merchandise to be conducted in this manner.
 
 
 49
 I have a serious question whether a reasonable reading of Bigelow, Virginia Pharmacy, Bates, and Ohralik can yield a conclusion that a state university is constitutionally limited to a narrow range of options in regulating third parties permitted on school premises to promote sales of merchandise. I believe this matter should be addressed by the entire Court and the subject carefully considered before signals are sent to state universities indicating that they may well lose a significant portion of their control over commercial activity on their campuses.
 
 
 50
 I am concerned that, unless the courts are prepared to step back and take a careful review of the precedents, the extension of a juridical concept by a dry and remorseless logic can carry us to a position never contemplated by the Supreme Court when this doctrine was first propounded. Moreover, it is a position totally incompatible with our societal concerns.[7]
 
 
 51
 ALDISERT, JAMES HUNTER, III, WEIS and GARTH, Circuit Judges, join in this statement.
 
 
 
 [1]
 Wingert withdrew from Penn State in February 1981. Brubaker is still a student at Penn State, but no longer resides in the residence halls
 
 
 [2]
 In American Future Systems I, 464 F.Supp. 1252, 1256 (M.D.Pa.1979), the district court found that:
 A sales demonstration put on by American Future Systems generally proceeds in two parts: A demonstration of the American Prestige Series products including a comparison of those products with other merchandise and an explanation of why American Prestige products are superior, and a sales portion where interested students are given an opportunity to purchase products on an installment plan basis.
 
 
 [3]
 In a letter dated October 3, 1980, counsel for Penn State explained the reason for rejecting AFS' proposal as follows:
 Generally speaking, requests (to conduct group demonstrations in the public areas of the dormitories) are honored where the "demonstration" has educational value, does not interfere with the normal activity of the area and does not involve an outright solicitation of a commercial sale.
 The "demonstration" may result in the consummation of a commercial transaction if the student pursues the matter at the place of business of the vendor or if the student invites the vendor to his or her room to meet on an individual basis. In addition, an individual student may invite a vendor to the student's room, whether or not a "demonstration" has occurred for the consummation of a commercial solicitation and sale with that student only.
 However, group "demonstrations" or group sales by commercial organizations, or others who are not residents, are not permitted in the private areas of the residence halls, including the rooms of the students.
 The purpose behind these distinctions is to try to achieve a balance between the personal needs of the individual student and the needs for privacy and maintenance of a proper study atmosphere for large numbers of students living in communal facilities.
 Although these distinctions may not be entirely logical, and although it may be difficult to tell the difference between a "demonstration" and an outright commercial solicitation, the policy by and large has achieved its purpose.
 App. at 26a-27a.
 
 
 [4]
 The letter stated that "the material starting with the bottom paragraph of card 14 through the second paragraph on card 18 is not permissible because cooking by students, or anyone else, is not permitted in the residence halls." App. at 69a. The letter also rejected the material on cards 24-31 (relating to the price of AFS's china and guarantee and payment plans offered to students); the first paragraph of card 37 (relating to the price of AFS's crystal); cards 52-65 (relating to the price of AFS's cookware and package plans, guarantee and payment plans, and the Florida holiday drawing); and "those portions of cards 66-67 which involve the distribution of contracts to the group." Id
 
 
 [5]
 It may be wishful thinking to assume that most student guests attend the demonstrations for their educational value. Students are told in advance that those who attend are eligible to participate in the drawing of a winner of a four-day vacation in Florida. See American Future Systems I, 618 F.2d at 254
 
 
 [6]
 The district court rejected the claim of Brubaker, Wingert, and Graves that Penn State's policies abridge their rights under § 504-A of the Pennsylvania Landlord and Tenant Act, 68 P.S. § 250.544. That section provides:
 The tenant shall have a right to invite to his apartment or dwelling unit such employees, business visitors, tradesmen, deliverymen, suppliers of goods and services, and the like as he wishes so long as his obligations as a tenant under this article are observed. The tenant also shall have right to invite to his apartment or dwelling unit, for a reasonable period of time, such social guest, family or visitors as he wishes so long as his obligations as a tenant under this article are observed. These rights may not be waived by any provisions of a written rental agreement and the landlord and/or owner may not charge any fee, service charge or additional rent to the tenant for exercising his rights under this act.
 It is the intent of this article to insure that the landlord may in no way restrict the tenant's right to purchase goods, services and the like from a source of the tenant's choosing and as a consequence any provision in a written agreement attempting to limit this right shall be void and unenforceable in the courts of this Commonwealth.
 The parties disagree as to whether this statute applies to Penn State's dormitories and have referred us to no relevant Pennsylvania court decision construing this statute. Under these circumstances, and since the students' claims may be resolved on the basis of other federal issues, it is unnecessary at this time to reach this issue.
 
 
 [7]
 As the Chief Justice has reminded us: " 'All rights tend to declare themselves absolute to their logical extreme. Yet all in fact are limited by the neighborhood of principles of policy which are other than those on which the particular right is founded....' " United States v. 12 200-Ft. Reels of Super 8 Mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), quoting Hudson County Water Co. v. McCarter, 209 U.S. 349, 355, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908) (Holmes, J.)