**AMERICAN FUTURE SYSTEMS, INC., et al., Plaintiffs,**

v.

**The PENNSYLVANIA STATE UNIVERSITY, et al., Defendants.**

**Civ. No. 81–0171.**

United States District Court,
M.D. Pennsylvania.

Aug. 5, 1983.

James T. Moughan, Henry T. Reath, George E. Pierce, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Delbert J. McQuaide, R. Mark Faulkner, McQuaide, Blasko, Schwartz, Fleming & Faulkner, State College, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

Plaintiffs, American Future Systems, Inc. (AFS), Steven Brubaker, Richard J. Wingert, W. Bruce DelValle, Joan D. Varsics, Dennis C. Habecker, John B. Spillar and Kevin Graves, filed this action alleging violation of their constitutional rights and rights granted by Pennsylvania law by Defendants the Pennsylvania State University (Penn State), the Board of Trustees of Penn State, John D. Oswald and M. Lee Upcraft on February 5, 1981. This is the second lawsuit before the Court involving Penn State's regulation of commercial activities in its dormitories.

In the first lawsuit, judgment was granted in favor of Penn State upholding its regulations against an attack that they violate the First Amendment rights of AFS. *American Future Systems, Inc. v. Pennsylvania State University*, 464 F.Supp. 1252 (M.D.Pa.1979) (Muir, J.), *aff'd*, 618 F.2d 252 (3d Cir.1980) (*American Systems I*). In this case, the second lawsuit filed by American Future Systems, Plaintiffs filed a motion for a preliminary injunction which was denied by this Court in *American Future Systems v. Pennsylvania State University*, 510 F.Supp. 983 (M.D.Pa.1981) (Muir, J.) (*American Future Systems II*). By opinion and order of September 16, 1981, this Court granted summary judgment in favor of the Defendants. *American Future Systems II*, 522 F.Supp. 544 (M.D.Pa.1981) (Muir, J.). On August 9, 1982, the Court of Appeals reversed this Court's grant of summary judgment and remanded the case to this Court for further proceedings. *American Future Systems II*, 688 F.2d 907 (3d Cir. 1982).

On October 18, 1982, Plaintiffs AFS, Kevin Graves and other student plaintiffs renewed their motion for a preliminary injunction. A hearing on the Plaintiff's motion commenced on Thursday, December 2, 1982, and concluded on Saturday, December 4, 1982. On December 21, 1982, this Court issued an opinion and order with respect to the motion for preliminary injunction. *American Future Systems v. Pennsylvania State University*, 553 F.Supp. 1268 (M.D.Pa. 1982) (Muir, J.) (*American Future Systems III*). The Court's order provided, *inter alia*, that:

> Pending final hearing or further order of this Court, Defendants John W. Oswald, M. Lee Upcraft, the Board of Trustees of the Pennsylvania State University, Pennsylvania State University, and its employees and agents, are hereby enjoined from enforcing Paragraph 3 of the "Regulations for the Solicitation of Money or the Sale or Solicitation of Sale of Products or Services in University Resident Halls," promulgated November 19, 1982, with respect to Kevin Graves, the only named individual student plaintiff who resides in

Penn State's residence halls. Order of December 21, 1982 at ¶ 6.

The Court further placed the case on the Court's Williamsport, July 1983 trial list for disposition on the merits.

On December 14, 1982, while the motion for a preliminary injunction was under advisement before the Court, Plaintiffs filed a motion to join Kathy Johnson as an additional Plaintiff in this action. The motion was granted on January 18, 1983.

On February 7, 1983, Plaintiffs filed a motion for summary judgment. By order of March 10, 1983, the motion for summary judgment was denied by the Court. In particular, the Court noted that its findings of fact and conclusions of law in the December 21, 1982 opinion were based solely on and limited to the evidence and legal arguments submitted relating to a request for preliminary injunctive relief. The Court expressly stated in its opinion of December 21, 1982 that, at that juncture, it was "only proper for the Court to determine whether or not Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction granting relief sought in the complaint." *American Future Systems III*, 553 F.Supp. at 1277. With respect to the rights of the student plaintiffs, the Court stated that "It is *likely* that the free flow of ideas resulting from attendance at group commercial demonstrations and solicitations is protected by the First Amendment. The right to serve as host or hostess for such demonstrations is also *likely* protected." *American Future Systems III*, 553 F.Supp. at 1278 (emphasis added). The Court concluded in its opinion granting preliminary injunctive relief that "Penn State's enunciation of its alleged 'significant governmental interest' [supporting the Dormitory Solicitation Regulations] is unconvincing . . . ." and that " . . . Penn State *will likely not establish at trial* that its dormitory solicitation regulations 'serve a significant governmental interest.'" 553 F.Supp. at 1280–1281 (emphasis added). Envisioning that Penn State would produce evidence *at trial* which might substantiate its Dormitory Solicitation Regula-

tions, the Court denied the Plaintiffs motion for summary judgment.

On April 26, 1983, the Court approved a stipulation in which Plaintiffs and Defendants agreed that no further evidence would be presented. Plaintiffs and Defendants further stipulated that the following additional fact be made part of the record:

> Kathy Johnson is a party to this action who, as of the date of this Stipulation, is a freshman at Penn State and resides in a dormitory room in a University residence hall. She has desired and continues to desire to host and/or attend the kind of demonstration conducted by the Plaintiff, American Future Systems, and which is precluded under university regulations. Stipulation at ¶ 6(a).

The parties agreed to submit briefing on the application for a permanent injunction.

On June 13, 1983, for the first time during the period of approximately 5½ years since this and its companion litigation began (*American Future Systems I* was filed on December 22, 1977), the Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, contending that the actions of Penn State's Board of Trustees and officials do not constitute conduct under color of state law. By order of July 26, 1983, the Court concluded that it was well settled in this Circuit that the actions of Penn State constituted conduct under color of state law. *E.g., Benner v. Oswald,* 444 F.Supp. 545 (M.D.Pa.1978) (Muir, J.), aff'd, 592 F.2d 174 (3d Cir.1979); *Klain v. Pennsylvania State University,* 434 F.Supp. 571 (M.D.Pa.1977) (Herman, J.); *Braden v. University of Pittsburgh,* 392 F.Supp. 118 (W.D.Pa.1975), aff'd, 552 F.2d 948, 956 (3d Cir.1977). Accordingly, the motion of the Defendants to dismiss the complaint was denied.

## II. Discussion.

As a result of the narrowing of the issues in this litigation, the sole question before the Court is whether or not Penn State's Dormitory Solicitation Regulations limiting commercial activities in individual student's dormitory rooms violate the constitutional rights of the *student* Plaintiffs. The par-

ties agree that the only student plaintiffs who have standing to challenge the Dormitory Solicitation Regulations are students who are presently residing in Penn State's residence halls and who desire to serve as host or hostess for a group demonstration and solicitation such as that provided by AFS. Kevin Graves and Kathy Johnson are the only such named student Plaintiffs who have standing to sue.

While the issue of the validity of Penn State's Dormitory Solicitation Regulations has twice been to the Court of Appeals of this Circuit, *American Future Systems II,* 688 F.2d 907 (3d Cir.1982); *American Future Systems I,* 618 F.2d 252 (3d Cir.1980), the primary emphasis of prior litigation has related to the rights of AFS and presentations in "common areas" of Penn State's residence halls. As a result of recent case law in this Circuit, the issues of the rights of AFS and presentations in "common rooms" areas are no longer directly involved in this case. *See International Society for Krishna Consciousness, Inc. v. New Jersey Sports and Exposition Authority,* 691 F.2d 155 (3d Cir.1982); *American Future Systems III,* 553 F.Supp. at 1276–77. *See also, American Future Systems I,* 618 F.2d at 256. *Cf.* Petition of Plaintiffs for Leave to Amend or Supplement Complaint and Motion for Preliminary Injunction Doc. No. 150, filed on November 29, 1982 and Orders Granting Petition, Doc. Nos. 175, 176, filed December 2, 1982. Thus, there is little guidance from the Court of Appeals in its prior decisions in the American Future Systems litigation on the issue presently before the Court.

Preliminarily the Court must determine the extent to which the student Plaintiffs have constitutional rights which are infringed, if at all, by Penn State's Dormitory Solicitation Regulations. The Defendants take the position that the speech at issue in this case is "commercial" in nature and, therefore, not subject to First Amendment protection. The Defendants rely on *Central Hudson Gas and Electric v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), in which the Court de-

clared that "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading." 447 U.S. at 566, 100 S.Ct. at 2351. The Defendants contend that AFS's presentation is misleading, if not unlawful, and point to several Federal Trade Commission regulations which AFS's presentation is alleged to violate. *See* 16 C.F.R. § 429.1 *et seq.*

The reliance of the Defendants on *Central Hudson Gas* is misplaced. As recognized by this Court in *American Future Systems III,* the issue is not whether the precise presentation of AFS may or may not be permitted in Penn State's residence halls. Instead, the issue is whether Penn State's Dormitory Solicitation Regulations may be enforced to prevent *students* from exercising their First Amendment speech and associational rights. As defined by the Supreme Court, commercial speech is "speech which does 'no more than propose a commercial transaction.'" *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976), *quoting Pittsburgh Press Co. v. Human Relations Commission,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973). Clearly, the communicative process at issue here, at least with respect to the students, does not involve solely *commercial* speech. *Cf., Ad World, Inc. v. Township of Doylestown,* 672 F.2d 1136, 1140 (3d Cir.1982) (category of "commercial speech" limited to "purely commercial advertising").

Plaintiffs Graves and Johnson testified that their reasons for participating in AFS demonstrations are primarily educational, social and cultural and not "commercial." Graves testified that he wanted to act as a host at an AFS sales demonstration as follows:

At the time, I really didn't know too much about AFS. I guess the main reason was I wanted to learn a little bit more. As you can probably guess, I really have no need for china or cookware right now. I wanted to learn about it. Another reason was, I don't know—as you probably know, since you went to college, sometimes study breaks are common if you have been studying for a few hours. I thought it would be a good way for me and a few of my friends to get together and possibly learn a little bit more. It's also a good way to get people in my room, some people I didn't know, meet new people. N.T. December 2, 1982 at 80.

Johnson stated her reasons for desiring to attend an AFS demonstration as follows:

Mainly curiosity. I like shopping so I can find out what the best buys are. This seemed like an ideal situation to find out not only what AFS had to offer me, but also how to tell good quality china and things like that. And it seemed like a neat idea.

\* \* \* \* \* \*

The main thing is having the group around you because it's like in a classroom when you're scared to ask a question or you won't ask it because someone next to you will. Or if they ask a question and you come up with another one, then you have somebody to relay your information off of and you can always get a second opinion on what the seller has to say. N.T. December 2, 1982 at 100.

Free flow of ideas resulting from attendance at group commercial demonstrations and solicitations is a constitutionally protected right of the student Plaintiffs. *See NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). *See also, Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542 (1969) (it is "well established that the constitution protects the right to receive information and ideas"); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756, 96 S.Ct. 1817, 1822, 48 L.Ed.2d 346 (1976) (where there is constitutionally protected free speech, "the protection afforded is to the communication, to its source and to its recipients both"). *E.g., Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 99

S.Ct. 1826, 60 L.Ed.2d 360 (1979); *Board of Education, Island Trees Union Free School District No. 26 v. Pico,* 457 U.S. 853, 102 S.Ct. 2799, 2806–08, 73 L.Ed.2d 435 (1982).

The fact that the constitutional rights of the student Plaintiffs are adversely affected by Penn State's Dormitory Solicitation Regulations only begins the inquiry. As the Court of Appeals of this Circuit stated in *American Future Systems II,* "... even speech entitled to the highest First Amendment protection may be subject to reasonable time, place and manner regulations that are content-neutral, serve a significant governmental interest, and leave open ample alternative channels for communication of the information." *American Future Systems II,* 688 F.2d at 915, *citing Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981). *See American Future Systems III,* 553 F.Supp. at 1279, *citing Adderley v. Florida,* 385 U.S. 39, 47–48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966); *Poulos v. New Hampshire,* 345 U.S. 395, 405, 73 S.Ct. 760, 766, 97 L.Ed. 1105 (1953).

This Court concluded in *American Future Systems III* that Penn State's Dormitory Solicitation Regulations with respect to group commercial solicitation students' private dormitory rooms were not "content based." 553 F.Supp. at 1280, *citing Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978) ("We have not discarded the 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech...."); *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974); *American Future Systems I,* 618 F.2d at 257–59. No party contests this conclusion of the Court.

Penn State's Dormitory Solicitation Regulations with respect to commercial activities are void unless they "leave open ample alternative channels for communication of information." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. at 771, 96 S.Ct. at 1830. On the motion for a preliminary injunction, the Court stated as follows:

> There is no doubt that Penn State's dormitory residents have ample opportunity, albeit on a one-on-one basis, to receive the presentation of AFS and other commercial solicitors. Student dormitory residents may also, without apparent limit, invite other students to their rooms. However, Penn State explicitly prohibits group demonstrations in its dormitories. There has been no evidence that Penn State provides "ample alternative channels" where the substantive communication which exists at the group demonstrations would be permitted. *American Future Systems III,* 553 F.Supp. at 1280.

Penn State now points to evidence introduced at the preliminary injunction hearing which would support the view that it has, in fact, provided "ample alternative channels" for the communication of the information at issue in this lawsuit. In particular, the Defendants note that AFS itself has specified alternative off-campus locations for an AFS presentation, including "(a) friend's apartment; (b) local church meeting room; (c) YWCA meeting room; (d) nearby hotel, motel." N.T. December 3, 1982 at 190. The Defendants note that since the Plaintiffs can clearly go off-campus to receive this information, "ample alternative channels" are available. *E.g. Greer v. Spock,* 424 U.S. 828, 839, 96 S.Ct. 1211, 1218, 47 L.Ed.2d 505 (1976) (servicemen who were required to go off of a military base to conduct first amendment protected activities had "ample alternative channels" of communication available to them). Furthermore, according to Defendant Upcraft, Director of Residential Life Programs at Penn State, the entirety of sales demonstrations such as that presented by AFS could be held at the Nittany Lion Inn, a Penn State-operated hotel which is located on the Penn State campus, is open to the public, and has facilities for the use of outside vendors in which to demonstrate, solicit

contracts for sale and sell their products. N.T. December 4, 1982 at 79. Certainly, an off campus presentation or one which took place at the Nittany Lion Inn would not be as convenient for students as would be a demonstration in the dormitories. However, convenience alone cannot dictate the result here, cf., *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), and the Court concludes that Penn State's Dormitory Solicitation Regulations leave open "ample alternative channels" for communication of information.

Even assuming that Penn State's Dormitory Solicitation Regulations with respect to group commercial solicitation in students' private dormitory rooms are not "content based" regulations and leave open "ample alternative channels" for communication of information, Penn State's time, place and manner regulations on commercial activities in its dormitories may be upheld only if they serve "a significant governmental interest." *Heffron v. International Society for Krishna Consciousness,* 452 U.S. at 647–48, 101 S.Ct. at 2563–64, *quoting Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. at 771, 96 S.Ct. at 1830 (1976). *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Penn State has advanced a variety of purported justifications for its Dormitory Solicitation Regulations with respect to commercial activities in students' dormitory rooms. According to Penn State, regulation of such commercial activity is proper because:

(a) Such activity could invade the privacy of students;

(b) Such activity could disrupt students while studying or sleeping;

(c) Such activity could disrupt the educational and personal development programs of the Office of Residential Life Programs;

(d) Such activity could disrupt the activities of student government;

(e) Such activity could disrupt organized and informal and social and recreational activities of students;

(f) Disruptions, to the extent that they occur, would be for a purpose unrelated to the purpose for which residence halls are dedicated;

(g) The greater the frequency of the solicitation of money and sales of products and sales of services, the more likely disruptions would occur;

(h) Such activity could displace some of the normal activities carried on in a residence hall;

(i) Such activity would require Penn State to exercise controls on the commercial activities which could divert resources and efforts from the purpose for which they are now used;

(j) Group solicitations and sales are incompatible with the uses to which the residence halls are dedicated; and

(k) Group solicitations and sales have the potential for deception, fraud and overreaching.

*American Future Systems III,* 553 F.Supp. at 1280.

This Court noted in its opinion granting the motion of the Plaintiffs for a preliminary injunction that Penn State's enunciation of its alleged "significant governmental interests" is unconvincing. *See American Future Systems III,* 553 F.Supp. at 1280–81. Rather than attempting to introduce further evidence at the trial on the merits which might convince the Court of the existence of "significant governmental interests" to support Penn State's Dormitory Solicitation Regulations, Penn State has concluded that no further evidence is necessary and has stipulated that the Court should decide the case for final injunction purposes based upon the evidence submitted by parties at the preliminary injunction hearing. In declining to present further evidence, Penn State apparently is of the view that the evidence submitted at the preliminary injunction hearing suffices to dictate the result that Penn State's Dormitory Solicitation Regulations, in fact, serve "significant governmental interests."

When the Court entered its preliminary injunction it found Penn State's enunciation of its alleged "significant governmental in-

terests" unconvincing and the Court is of a similar view today. "Residence halls are in essence a student's home away from home." *American Future Systems I,* 464 F.Supp. at 1262. *See also, Brush v. Pennsylvania State University,* 489 Pa. 243, 249, 414 A.2d 48, 51 (1980). As such, the Court concluded that Penn State's proffered statement of reasons to support its Dormitory Solicitation Regulations was not compelling. *See American Future Systems III,* 553 F.Supp. at 1281.

This Court remains unconvinced that Penn State's Dormitory Solicitation Regulations serve any significant governmental interests. Paragraph 3 of the "Regulations for the Solicitation of Money or Sale or Solicitation of Sale of Products or Services in University Residence Halls", promulgated November 19, 1982, violates the constitutional rights of student Plaintiffs Graves and Johnson.

A permanent injunction and declaratory judgment will issue.